348 P.2d 683

**In the Matter of the ESTATES of William Robert WILLIAMS, aka William R. Williams and Sarah Corless Williams, Deceased.**

**Gladys Williams, aka Tania Karol, Petitioner and Appellant.**

No. 9093.

Supreme Court of Utah.

Jan. 20, 1960.

D. M. Amoss, Bryce E. Roe, Salt Lake City, for appellant.

Leonard W. Elton, Salt Lake City, for respondent.

WADE, Justice.

Gladys Williams, also known as Tania Karol, appeals from a summary judgment in favor of Inez Williams Warshaw, the administrator of the estate of her parents, William Robert Williams and Sarah Corless Williams, deceased. Gladys is the daughter of Cora and William Carroll who were married but living apart when she was born. When Gladys was about three weeks old her mother consented to the Williamses taking her temporarily. Since then the child was never returned to the custody of her parents or either of them, but was raised and treated as the child of the Williamses.

Gladys contends that she has shown that she could produce prima facie proof by circumstantial evidence of a contract to adopt her between the Williamses and her mother, that her mother fully performed her part

of the contract and the Williamses fully performed their part of the contract except they failed to obtain a decree of adoption. Under the doctrine that equity regards as done what should have been done, she contends that as a means of specific performance she should be awarded the same share of the Williamses estate as she would have been entitled to had they fully performed their contract and fulfilled their agreement to adopt.

Although we have never decided this exact question we have required specific performance of contracts in contemplation of death, where a deceased person has failed to devise, transfer or convey certain property in accordance with an agreement for services which has been fully performed by the other party.[1] It is generally recognized that where a child's parents agree with the adoptive parents to relinquish all their rights to the child in consideration of the adoptive parents' agreement to adopt such child, and to care and provide for it the same as though it were their own child, and such agreement is fully performed by all parties connected with such contract except there is no actual adoption, the courts will decree specific performance of such contract and thereby award to the child the same distributive share of the adoptive parents' estate as it would have been entitled to had the child actually been adopted as agreed.[2] A contract to adopt the same, as other facts, may be proved by circumstantial evidence, but such evidence must be clear and convincing.[3] Some allowance, however, should be made for the fact that all the parties to such contract are dead, and the child was an infant when the contract was made. As was said in Roberts v. Roberts:[4]

"The argument by which we are asked to reverse the decree is that there was no direct or clear evidence of an agreement to adopt at the time Myra J. Roberts was received into the family of Charles J. Roberts. There is good reason why such evidence is wanting. All of the parties to the transaction are dead, and Myra J. Roberts was herself a babe at the time of the adoption. It seems to us that in such a case it is not necessary that the court first have direct proof of the making of the contract, and then pro-

1. Randall v. Tracy Collins Trust Co., 1956, 6 Utah 2d 18, 305 P.2d 480; Van Natta v. Heywood, 1920, 57 Utah 376, 195 P. 192; Brinton v. Van Cott, 1893, 8 Utah 480, 33 P. 218.

2. See annotation of Specific performance of contract to adopt: 27 A.L.R. 1325 to 1369; 142 A.L.R. 84 to 129; 171 A.L.R. 1315 to 1327.

3. See Monahan v. Monahan, 1958, 14 Ill. 2d 449, 153 N.E.2d 1. In re Garcia's Estate, 1940, 45 N.M. 8, 107 P.2d 866; Roberts v. Roberts, 8 Cir., 1915, 223 F. 775. See also the annotations on this question in note 2 above.

4. See Roberts v. Roberts, 8 Cir., 1915, 223 F. 775, 776.

ceed forward from the contract thus established to the conduct evidencing its existence. We think it is possible to reverse that process, and if the statements and conduct of the adopting parents are such as to furnish clear and satisfactory proof that an agreement of adoption must have existed, then the agreement may be found as an inference from that evidence."

Following is a brief summary of the facts Gladys claims she can prove: When about three weeks old, with her mother's consent she was placed in the home of the Williamses for care until the mother was able to care for her. About a year later the mother went to the Williamses home to get Gladys but the Williamses objected, telling her that they had come to love her as their own child, that Mrs. Williams was in delicate health, that she had lost a child and was unable to bear more, and that they feared for her health if she lost Gladys; thereby she induced the mother to leave her with them under their promise to raise, care for and treat Gladys in all respects as their own child. On March 13, 1913, when Gladys was about three years old her mother divorced her father, the court finding that the Williamses were raising Gladys with the knowledge of the father and the consent of the mother, but no award for her support was made, although such an award was made for the support of an older sister. The Williamses continued to insist on an adoption, the mother was advised by her attorney that this was the "best way" and the mother later reported that she had "signed Gladys away" and promised not to see her or tell her she was her mother, and when the mother went to the Williamses home she was not permitted to see Gladys. A schoolmate told Gladys that she was an adopted child, but the Williamses denied this when she confronted them claiming that they were her natural parents. The Church of Jesus Christ of Latter-day Saints records show that Gladys was born March 18, 1910, to William R. Williams, father, and Sarah Corless, mother, and that she was baptised and confirmed a member of that Church in 1918. The Williamses raised Gladys in their own home until maturity and during their entire lives treated her like and held her out to the world as their own child.

A summary judgment is proper only if the pleadings, depositions, affidavits and admissions show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.[5] If the proof which plaintiff claims she can produce when considered in the light most favorable to her would

---

5. See Utah Rules of Civil Procedure Rule 56, especially subdivisions (b) and (c) and cases cited in annotations to those subdivisions in Utah Code Annotated Vol. 9 1959 Pocket Supplement.

reasonably justify a finding by clear and convincing evidence that there was an agreement to adopt, then there is a genuine issue of material fact and the case must be reversed. We conclude that without giving plaintiff the opportunity to present her evidence in a trial we cannot hold as a matter of law that plaintiff is not entitled to recover.

Judgment reversed with directions for further proceedings in the trial court in accordance with the views herein expressed. Costs to appellant.

CROCKETT, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.