Mrs. Herman FOSTER and John Ewing,
natural parents of Jeffrey Adrian Ew-
ing, aka Jeffrey Ewing Foster, deceased,
a minor, and David Mac Kelly, Plaintiffs
and Respondents,

v.

SALT LAKE COUNTY, a body corporate
and politic of the State of Utah,
Defendant and Appellant.

No. 16608.

Supreme Court of Utah.

June 15, 1981.

Theodore L. Cannon, Salt Lake County
Atty., Ralph D. Crockett, Deputy County
Atty., Merlin R. Lybbert and Scott Daniels
of Snow, Christensen & Martineau, Salt
Lake City, for defendant and appellant.

Carman E. Kipp, W. Brent Wilcox, Salt
Lake City, for plaintiffs and respondents.

STEWART, Justice:

Defendant Salt Lake County appeals
from a summary judgment of the Third
District Court that it is liable to pay a
$150,000 judgment won by plaintiffs Foster
and Ewing against David Mac Kelly, a for-
mer employee of the County.

Kelly was a Salt Lake County Deputy
Sheriff to whom the County assigned a
patrol car for use on a 24-hour-a-day, seven-
day-a-week basis—both on and off duty.
At approximately 11:00 p. m. on January
26, 1978, Deputy Kelly, while driving the
patrol car, collided with a pedestrian, Jef-
frey Adrian Ewing, plaintiffs' sixteen-year-
old son. Ewing died almost instantly. Kel-
ly was under the influence of alcohol at the
time. No determination was made in the
trial court as to whether he was driving the
vehicle in the performance of any of his
duties as a deputy sheriff.[1]

On March 9, 1978, Kelly was served with
a summons and complaint in an action
brought by the decedent's parents for the
wrongful death of their son. Also named
as defendants were Salt Lake County, Sher-
iff Delmar L. Larson, and Vance L. Rex.[2]
Kelly forwarded the summons and com-
plaint to the insurance carrier on his per-
sonal vehicle, although that vehicle had not

---

1. Deputy Kelly's duties included serving bench
warrants. On the night of the accident he had
several such warrants with him.

2. A Notice of Claim had been served on the
County on February 14, 1978.

been involved in the accident. On March 15, 1978, Kelly's insurance carrier tendered the defense of the action to Salt Lake County on the basis that a County vehicle was involved. The tender was refused by the County on March 23, 1978, for the reasons that (1) Kelly had failed to comply with § 63–48–3[3] of the Indemnification of Public Officers and Employees Act, §§ 63–48–1, et seq.; (2) he had failed to cooperate in the defense of the action as required by that Act,[4] and (3) he was not acting in the scope and course of his employment at the time the accident occurred.

Kelly subsequently was terminated from the sheriff's department and convicted of automobile homicide as a result of the accident in question. He retained private counsel for the defense of the civil action. His private counsel again tendered the defense to the County on July 27, 1978. On August 23, 1978, the County again refused the tender.

On December 12, 1978, Kelly entered into a stipulation with decedent's parents which provided, inter alia, that (1) the parents could schedule a nonjury trial at which Kelly would not contest the issue of his liability; (2) Kelly would assign to decedent's parents all rights he might have against Salt Lake County; and (3) the parents would not execute against Kelly personally on the judgment obtained except to the extent of Kelly's rights, if any, against the County or any other insurance company affording liability coverage to Kelly. None of the other defendants in that action was a party to the stipulation.

On January 4, 1979, pursuant to stipulation of all of the parties, Salt Lake County, Larson, and Vance were dismissed from the action "without prejudice." The matter was then tried the next day to the district court sitting without a jury. The court found that Kelly was negligent and his negligence caused the death of plaintiffs' son. Judgment was awarded against Kelly in the sum of $150,000.

Decedent's parents then filed the instant action against Salt Lake County on January 30, 1979, with Kelly also named as a plaintiff. The complaint sought judgment declaring that Salt Lake County was the liability insurer of Deputy David Mac Kelly and therefore indebted to Kelly and plaintiffs Foster and Ewing because of the judgment against Kelly.[5] The plaintiffs prayed for judgment against the County in the sum of $100,000.[6]

The County answered on February 14, 1979, and in addition asserted twelve affirmative defenses. These were: (1) failure to state a cause of action against the County; (2) the pendency of another action involving the same issues;[7] (3) the judgment against Kelly could not be enforced

---

3. Section 63–48–3(1) reads:

    If any officer or employee desires the public entity to defend him against any claim, the officer or employee shall request the public entity in writing to so defend him not later than ten days after service of process upon him in respect to the claim. If the officer or employee fails to make such request of the public entity, or if the officer or employee fails to reasonably co-operate in the defense of the claim, then the public entity is not obligated to defend the officer or employee against the claim or continue this defense in case of such failure to co-operate, nor pay any judgment, compromise, or settlement in respect to the claim.

4. The allegation of noncooperation apparently stems from the fact that Deputy Kelly refused to give a written statement concerning the accident to the County's claims adjuster. He so refused on the advice of counsel who was de-

fending him in the criminal action brought by the County against Kelly arising out of the accident in question.

5. The complaint makes no reference to the assignment made by the stipulation of December 12, 1978. The complaint refers to Foster and Ewing as judgment creditors of Kelly.

6. The Utah Governmental Immunity Act, §§ 63–30–1, et seq., provides that for judgments entered under §§ 63–30–7, 8, 9, and 10, the governmental entity is liable to the extent of the minimum amounts specified in § 63–30–29 which, in the case of the death of one person, is $100,000. Section 63–30–34.

7. This is an action between Farmers Insurance Exchange, Kelly's private insurance carrier, as plaintiff, and Salt Lake County and Kelly as defendants.

against the County because the action resulting in that judgment was collusive; (4) the defense of the action against Kelly was not conducted in good faith; (5) plaintiffs' failure to file an undertaking as required by § 63–30–19; (6) failure of Kelly to comply with the notice requirement of § 63–48–3(1);[8] (7) failure of Kelly to cooperate in the defense of the prior action; (8) Kelly was not acting in the scope of his employment or under color of authority at the time of the accident;[9] (9) at the time of the accident Kelly was acting with gross negligence and therefore the County had no duty to pay the judgment; (10) § 63–48–4 requires that Kelly must pay the judgment against him before seeking indemnity from the County, which has not been done; (11) plaintiffs have failed to give notice of their claim as required by § 63–30–13; and (12) Foster and Ewing lack standing to bring this action.

Subsequently plaintiffs filed a motion to strike all of the defenses enumerated above on the ground they did not constitute legal defense to the claims asserted. At the hearing on the motion, the district court treated it as a motion for "summary judgment as to the sufficiency of the defenses."

The district court also heard the County's motion for summary judgment. That motion was based on the County's assertion that the only possible basis of liability to decedent's parents was the Utah No-Fault Act, §§ 31–41–1, et seq., pursuant to which the County is a self-insurer. See § 31–41–5(b). Since the County had paid the $1,000 funeral benefit and the $2,000 survivor benefit required by the Act, § 31–41–6(1)(c) and (d), the County maintained that there was no other basis upon which its liability could be predicated.

The court granted plaintiffs' motion to strike with respect to all of the County's affirmative defenses except the third and fourth. As noted, the third alleged that the prior action resulting in the judgment sued on here was collusive, and the fourth alleged that the defense of the prior action against Kelly had not been conducted in good faith. The district court ruled that as to these defenses there were material issues of fact which precluded granting summary judgment.

The motion was granted as to the fifth defense—failure to file the undertaking required by the Governmental Immunity Act—on the basis that the action was brought pursuant to § 63–30–5 of the Act. That section waives immunity for actions arising out of contractual rights and obligations and such actions are exempted from the requirements of filing a notice of claim with the State, § 63–30–12, or a political subdivision, § 63–30–13, and of filing an undertaking, § 63–30–19.

The defenses based on the Indemnification Act—defenses 6, 7, 8, 9, and 10—were ordered stricken on the basis that the action was not being prosecuted pursuant to that act and therefore those defenses were irrelevant.[10]

In denying the County's motion for summary judgment, the court stated in its memorandum opinion:

> A review of the documents submitted to the court, particularly correspondence with and minutes of meetings of the Salt Lake County Commission raises numerous questions about the extent and scope

---

**8.** See n.3, *supra*.

**9.** The County is liable under the Governmental Immunity Act only if an employee is acting in the scope of his employment. Sections 63–30–7 and 63–30–10. The County must indemnify an officer or employee only if he was acting in the performance of his duties within the scope of his employment or under color of authority. Section 63–48–1.

**10.** The district court stated in its memorandum opinion:

> In summary, plaintiffs' action here depends on an alleged contract to insure, an action specifically permitted by the Utah Governmental Immunity Act, and exempted by that Act from otherwise applicable notice requirements. Further, plaintiffs place no reliance on the indemnification act, do not sue pursuant to its provisions, and therefore need not litigate defenses based on their failure to comply with them.

of the "self-insurance" undertaken or intended to be undertaken by the County on behalf of its employees and vehicles. Among other things, the decision to cancel existing liability insurance and substitute "self-insurance" with much-reduced benefits, if in fact that *was* the action taken, may constitute an improper "modification" of an insurance contract reducing benefits without notice or consent of the insured as required by § 31–19–26 U.C.A. Those material questions and issues merit a full evidentiary hearing at trial. Therefore, defendants' Motion for Summary Judgment should be, and hereby is, denied.

The County filed a notice of intent to appeal the court's order, both as to the defenses stricken and the denial of the County's motion for summary judgment, pursuant to Rule 72(a), Utah Rules of Civil Procedure. The County immediately thereafter moved to amend its answer to assert two additional affirmative defenses. The motion was granted. The first additional defense states:

> Plaintiffs' complaint alleges the existence of an implied contract of insurance between the defendant and the plaintiff David Mac Kelly, said alleged implied agreement—not being reduced to writing—constituting a promise to answer for the debt, default or miscarriage of another which is required to be in writing by the provisions of section 25–5–4(2), Utah Code Annotated, 1953, and is consequently void.

The second additional defense states:

> Plaintiffs' complaint alleges the existence of an implied contract of insurance between the defendant and the plaintiff David Mac Kelly, said alleged implied insurance policy not being in writing as required by Section 31–19–11, Utah Code Annotated, 1953, and consequently invalid and unenforceable under the provisions of Section 31–19–18, Utah Code Annotated, 1953.

With the case in this posture, the matter came on for jury trial on June 28, 1979. On the morning of that day, counsel for plaintiffs handed a motion for summary judgment to opposing counsel and the trial judge. The motion was based on the premise that if the court accepted the additional defenses raised in the amended answer, the result would be that the County did not have the security required by the No-Fault Act, and so pursuant to § 31–41–9, the County would have no immunity from tort liability and would be liable for the benefits payable under § 31–41–6.[11] Under plaintiffs' theory this would render the County liable for the entire $150,000 judgment entered against Kelly.

The motion was argued to the court and documentary evidence was offered and received. The court thereupon granted plaintiffs' motion for summary judgment, although clearly not on the theory advanced in the motion. In its judgment and order the court stated, in pertinent part:

> The Court finds that the County was a self-insurer and that such insurance coverage included liability insurance coverage to the vehicle which was assigned to Deputy Sheriff Kelly; that he was a permissive user at the time of the accident from which the Judgment resulted; that defense of that suit was timely and properly tendered to the County and the County denied and refused to undertake such defense; that the record of proceedings in Civil No. C–78–1377 is before the Court and is binding on the Court and not subject to attack by the County under the circumstances; that the County as a self-insurer is obligated to satisfy the Judgment together with interest and costs; that Deputy Kelly necessarily incurred attorney's fees in a reasonable sum of $1,015.00 which the County is obligated to pay; that the matter of gross negligence and the Public Officers and Employees

---

11. Section 31–41–9(2) reads:

The owner of a motor vehicle with respect to which security is required by this act who fails to have such security in effect at the time of an accident shall have no immunity from tort liability and shall be personally liable for the payment of the benefits provided for under § 31–41–6.

Indemnification laws are not involved in this controversy and have no bearing on the Judgment and Order which is hereby entered.

Plaintiffs subsequently filed a motion to amend the pleadings to conform with the evidence. The County also moved to reduce the judgment to $100,000 based on § 63–30–34 (see n. 6, *supra*) or, alternatively, to the limits of liability prescribed by the Safety Responsibility Act, §§ 41–12–1, *et seq.*[12] Both motions were denied by the district court on the basis that since a notice of appeal had already been filed by the County, the court lacked jurisdiction to hear them.

The granting of a motion for summary judgment is proper only if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Livingston Industries, Inc. v. Walker Bank & Trust Co.*, Utah, 565 P.2d 1117 (1977); *In re Williams' Estates*, 10 Utah 2d 83, 348 P.2d 683 (1960); Rule 56(b), Utah Rules of Civil Procedure.

This matter comes to this Court through a rather tortuous route and in an undefined state. Plaintiffs maintain that the County is a self-insurer of its vehicles, both under the No-Fault Act and the Safety Responsibility Act or some other provision relating to liability. They approach this action as one on the "policy" of insurance which they maintain covered the individual, David Mac Kelly. However, the terms of the "policy" and its policy limits have nowhere been argued or defined.

The County raises three points on appeal. The first is that the County's liability as a self-insurer is limited to payment of the benefits prescribed by the No-Fault Act. The second is that the County is not bound by the judgment against Kelly because (1) the judgment was based on collusion; and (2) since the stipulation between Kelly and decedent's parents allegedly relieves Kelly

of any legal obligation to pay the judgment, even an ordinary liability carrier would not be obligated to plaintiffs. Finally, the County maintains that sovereign immunity has not been waived for the type of action involved here and, in any event, the Governmental Immunity Act limits the County's liability to a maximum of $100,000.

It is clear from the transcript of the hearing held on June 28, 1979, that the district court was concerned that with both Kelly's private insurer and the County denying liability under all insurance provisions, the innocent injured parties, decedent's parents, were left without a remedy. The court held that the County was a self-insurer as to the vehicle involved in the accident and that Kelly was a permissive user at the time of the accident.

We reverse and remand because on this record it cannot be held as a matter of law that permissive use of a County vehicle by Kelly is a sufficient basis for holding the County liable as an insurer.

There is no doubt that the County is subject to the No-Fault Act, that it is a duly qualified self-insurer under that Act, and that it has paid the benefits required by the Act insofar as applicable to this case. It also appears that the County has elected to be a self-insurer under the Governmental Immunity Act. Section 63–30–28 states in part:

Any governmental entity within the state may purchase insurance or self-insure against any risk created by this act or by sections 63–48–1 through 63–48–7 [the Indemnity Act].

However, there is no certificate of self-insurance under that Act in the record. Nor is there anything else that indicates the nature of the self-insurance program.

In 1977 the County did not renew its liability policy carried by a private insurance company. It instead opted to become a self-insurer, although now it characterizes its program as one of "risk-retention" rath-

---

12. Section 41–12–1(k) defines "proof of financial responsibility" as the ability to respond in damages for liability in the amount of $15,000 on account of the bodily injury or death of one person; $30,000 because of bodily injury or death of two or more persons; $5,000 property damage or alternatively a $25,000 single limit.

er than self-insurance. The Act also authorizes a governmental entity to insure its employees against liability for injury or damage resulting from negligent acts or omissions in the scope of their employment, whether the entity would be immune from suit for such act or omission or not. Section 63–30–33. The commercial policy of insurance carried by the County prior to 1977 specifically included all employees and county officials as named insureds when acting in the scope of their employment. Whether such coverage was afforded under the self-insurance program cannot be determined from the record and cannot, at least at this point, be determined as a matter of law. The scope of the self-insurance, including the terms and limits of liability, simply was not addressed in the trial court.

To determine the scope of the self-insurance program, recourse must be had to Utah's insurance law and perhaps also to general legal principles relating to liability insurance and insurance carriers.[13] The scope of the self-insurance program may also depend in part on an analysis of the No-Fault Act, the Safety Responsibility Act,[14] the Governmental Immunity Act, and the Indemnification Act. There may also be factual issues that bear on the problem. For example, § 31–19–26 requires that any modification of a contract of insurance reducing protection must be in writing and signed by the insured. As previously noted, under the pre-1977 commercial policy, County employees were named insureds. The question arises whether in switching to a self-insurance program the County was obligated to inform its employees that they were no longer insured, if indeed that were the case.

The summary judgment cannot be sustained because there are genuine issues of material fact which must be resolved before the liability *vel non* of the County can be resolved. These factual issues may include but are not necessarily limited to, the nature of the self-insurance program, whether the original judgment against Kelly resulted from a collusive lawsuit, and the related issue of whether Kelly's defense in that action was conducted in good faith. It may also be necessary to determine factually whether Kelly was acting in the scope of his employment, and possibly whether he was a permissive user. Whether there are viable issues remaining under the Governmental Immunity Act and the Indemnification Act can only be resolved by the trial court.[15]

Reversed and remanded for further proceedings. No costs awarded.

MAUGHAN, C. J., and HALL and CROCKETT, JJ., concur.

WILKINS, J., heard the arguments but resigned before the opinion was filed.

---

13. We note that *Southern Home Insurance Co. v. Burdette's Leasing Service, Inc.*, 268 S.C. 472, 234 S.E.2d 870 (1977), held that a private self-insurer under South Carolina's Motor Vehicle Financial Responsibility Act must provide the same coverage as provided by an automobile liability insurance policy. Compare *United National Ins. Co. v. Philadelphia Gas Works*, 221 Pa.Super. 161, 289 A.2d 179 (1972).

14. Recently this Court had occasion to analyze the relationship between the No-Fault Act and the Safety Responsibility Act in *Allstate Insurance Co. v. U. S. Fidelity and Guaranty Co.*, Utah, 619 P.2d 329 (1980).

15. It is unclear why the provisions of the Indemnification Act are inapplicable here.