AMERICAN STATES INSURANCE COMPANY, an Indiana corporation, Plaintiff and Appellant,

v.

UTAH TRANSIT AUTHORITY, a Utah public transit district, Defendant and Respondent.

No. 18945.

Supreme Court of Utah.

March 6, 1985.

---

LeRoy S. Axland, Larry G. Reed, Michael W. Homer, Salt Lake City, for Plaintiff and Appellant.

Paul H. Matthews, David H. Epperson, Salt Lake City, Defendant and Respondent

HOWE, Justice:

Plaintiff American States Insurance Company (ASI) appeals from a summary judgment in favor of defendant Utah Transit Authority (UTA) denying ASI indemnification from UTA for uninsured motorist (UM) payments that ASI made to a UTA passenger.

The facts are undisputed. Raymond V. Chamberlain was injured while riding as a passenger on one of UTA's buses when the bus was struck by an uninsured motorist. ASI, which was the insurer of an automobile owned by Chamberlain, paid him $8,500 under the policy's UM coverage. UTA, a qualified self-insurer under the Utah Automobile No-Fault Insurance Act (No-Fault Act), U.C.A., 1953, § 31–41–5(1)(b), paid Chamberlain personal injury protection benefits of $364.61, but refused to indemnify ASI for the $8,500 it paid Chamberlain on the ground that it was not required to provide UM coverage for its passengers.

The sole issue before this Court is whether UTA was required to provide UM coverage for its passengers and, consequently, as the primary insurer, to indemnify ASI for payments it made to its own insured. We hold that it was not.

ASI invokes both the provisions of the No-Fault Act § 31–41–1 to –22, and those of the Motor Vehicle Safety Responsibility Act (Safety Responsibility Act) § 41–12–1 to –41 to obligate UTA to provide UM coverage for its passengers. It correctly points out that UTA is made subject to the requirements of the No-Fault Act in section 31–41–4(3) and that subsections 31–41–5(1)(a) and (b) require owners of motor vehicles to carry liability insurance that meets the qualifications imposed by the Safety Responsibility Act, *Allstate Insurance Co. v. USF & G*, Utah, 619 P.2d 329 (1980), or to be self-insured. ASI contends that because section 31–41–5(1)(b) imposes on a self-insurer "all of the obligations and rights of an insurer under this act" and requires it to afford security equivalent to a qualified policy, a self-insurer is obligated to provide UM coverage for passengers in its vehicles the same as an owner who is insured under a qualified policy. This contention requires an examination of our statute on UM coverage, section 41–12–21.1 of the Safety Responsibility Act:

[N]o automobile liability insurance *policy* insuring against loss resulting from liability imposed by law for bodily injury or death or property damage suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be *delivered, issued for delivery, or renewed* in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or a supplement to it, in limits for bodily injury or death set forth in section 41–12–5, under provisions filed with and approved by the state insurance commission for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. The named insured shall have the right to reject such coverage, and unless the named insured requests such coverage in writing, such coverage need not be provided in a renewal *policy* or a supplement to it where the named insured had rejected the coverage in connection with a *policy* previously issued to him by the same insurer. [Emphasis added.]

ASI contends that UTA is subject to this provision and that it did not reject or have the right to reject UM coverage, as it owes a high duty of care, as a common carrier

and a public agency, to its passengers. It also relies on section 31–41–7(2) of the No-Fault Act in support of its claim that UTA, as a matter of law, must indemnify ASI for UM coverage payments made to its insured. That section provides as follows:

When a person injured is also an insured party under any other policy, including those complying with this act, primary coverage shall be afforded by the policy insuring the motor vehicle out of the use of which the accident arose.

Section 41–12–21.1 on UM coverage set out above requires that no automobile liability insurance *policy* shall be delivered, issued for delivery, or renewed unless coverage is provided to protect against uninsured motorists. The named insured is given the right to reject such coverage, which in turn relieves the insurer from providing such coverage in a renewal policy or a supplement to it. The statutory language explicitly addresses the rights and duties of two parties, the insurer and the insured, under a contract of insurance. To read into that language legislative intent that UM coverage applies to a qualified self-insurer would contort its clear and express meaning.

UTA obtained its certificate of self-insurance when it demonstrated that it was possessed and would continue to be possessed of the ability to pay judgments against it. That certificate serves as an equivalent for a policy and satisfies the requirement of furnishing security. U.C.A., 1953, § 31–41–5(1)(b). However, a certificate of self-insurance negates the existence of a policy of insurance requiring an offer of UM coverage but permitting rejection. A self-insurer cannot offer insurance to itself, nor can it reject the insurance so tendered. A certificate of self-insurance is not really insurance or a policy of insurance; it is simply an assurance that judgments will be paid. U.C.A., 1953, § 41–12–34; *Guercio v. Hertz Corp.*, 40 N.Y.2d 680, 389 N.Y. S.2d 568, 358 N.E.2d 261 (1976). Section 41–12–21.1 clearly, by its own terms, cannot be made to apply to self-insurers.

Precedent exists under similar statutes in other jurisdictions. Arizona has held the UM coverage requirement inapplicable to self-insurers on the ground that a self-insurer cannot be regarded as an insurance carrier who alone is under legislative mandate to provide UM coverage. *Mountain States Telephone and Telegraph Co. v. Aetna Casualty and Surety Co.*, 116 Ariz. 225, 568 P.2d 1123 (1977). California considers a certificate of self-insurance not a motor vehicle liability policy of insurance but a method of providing exemption from security. *Glens Falls Insurance Co. v. Consolidated Freightways*, 242 Cal.App.2d 774, 51 Cal.Rptr. 789 (1966). Pennsylvania has interpreted its uninsured motorists act to require the existence of a liability policy of insurance before a cause of action may arise under the act that required UM coverage unless rejected but held that a self-insured is not required to have a liability policy. *Johnson v. Yellow Cab Co.*, 456 Pa. 256, 317 A.2d 245 (1974). Virginia has held that liability insurance underwriters and not self-insurers are required to provide UM coverage under a statutory exception requiring a UM endorsement in every insurance policy issued and delivered. *Shelton v. American Re-Insurance Co.*, 210 Va. 655, 173 S.E.2d 820 (1970). Louisiana arrives at the same conclusion, reasoning that to require a self-insurer to offer UM coverage would make that coverage mandatory and not optional for the self-insurer, as there would be no legal entity to which it could communicate rejection, and that such an anomalous result could not have been intended by the Legislature. *Jordan v. Honea*, La.App., 407 So.2d 503, 27 A.L.R.4th 1256 (1982). The only case we have found to support ASI's argument is *Crocker v. Transport of New Jersey*, 169 N.J.Super. 498, 404 A.2d 1293 (1979), which held that under statutes apparently peculiar to that state, self-insurers must cover the same risks as those owners holding insurance policies, including UM coverage.

ASI refers us to three Utah cases which, it argues, stand for the proposition that the provisions of the Safety Responsibility Act should be incorporated *in toto* into the

provisions of the No-Fault Act. None of them applies to the issue of self-insurance here presented. *Dairyland Insurance Corp. v. Smith*, Utah, 646 P.2d 737 (1982) precluded the rescission of a policy after the accident occurred. We there stated that a policy written to satisfy the security requirement of the No-Fault Act, section 31–41–5(1)(a) must meet the qualifications enumerated in section 41–12–5 of the Safety Responsibility Act. *Foster v. Salt Lake County*, Utah, 632 P.2d 810 (1981) was an appeal from summary judgment. We there remanded the case for trial on the merits as genuine issues of fact existed with respect to the nature of the county's self-insurance program. That case raised, but did not decide, the question of whether county officials acting in the scope of their employment were covered under the self-insurance program. *Allstate Insurance Co. v. USF & G*, Utah, 619 P.2d 329 (1980) addressed the validity of an exclusionary endorsement to a liability insurance policy. We there held that the exclusionary endorsement excluding an employee from coverage was void to the extent of minimum liability limits necessary to qualify under the Safety Responsibility Act and by incorporation under the No-Fault Act. The employer in that case was not self-insured.

In sum, UTA as a qualified self-insurer was not required to provide UM coverage for its passengers. It was obligated to, and did, furnish no-fault benefits for ASI's insured, Raymond V. Chamberlain. UTA was not negligent and thus did not owe a duty to Chamberlain to provide further coverage.

The judgment is affirmed. Costs on appeal are awarded to UTA.

HALL, C.J. and STEWART, J., concur.

ZIMMERMAN, Justice (concurring):

I join with the majority in holding that the Utah Transit Authority, a qualified self-insurer, is under no obligation to provide its passengers with uninsured motorist coverage. I write separately, however, because of the importance of highlighting the inconsistency between the policy underlying our mandatory uninsured motorist legislation and the treatment we are compelled to afford common carriers by the language of the present statute.

Appellant convincingly argues that the policies expressed in the Utah Automobile No-Fault Insurance Act, U.C.A., 1953, § 31–41–1, *et seq.* (1974), and the Motor Vehicle Safety Responsibility Act, U.C.A., 1953, § 41–12–1, *et seq.* (1981), should apply equally to all operators of motor vehicles, whether self-insured or covered by policies of insurance, and that the statutes should be interpreted to require self-insured common carriers to carry uninsured motorist coverage. Specifically, appellant contends that the Safety Responsibility Act requires motor vehicle owners to provide protection for themselves and their passengers against personal injuries suffered at the hands of uninsured motorists who are at fault. People who ride on Utah Transit Authority buses or on other common carriers should be equally well protected. Indeed, the plight of passengers on a common carrier presents a particularly compelling circumstance for requiring compulsory uninsured motorist coverage. In the present case, the injured passenger was an insured car owner, and the bulk of his damages was paid by his own automobile insurer. Absent that coverage, he would have gone uncompensated. However, many adults who ride buses do so precisely because they do not own cars. In addition, children compose a significant part of the population serviced by common carriers. Both of these groups are far less likely than the general population of car owners to have uninsured motorist insurance and run a much higher risk of being left without remedy if the buses in which they are riding are involved in injury-producing accidents with uninsured motorists.

Appellant's argument certainly has merit as a policy matter. The language of our current law, however, does not require self-insured common carriers to provide uninsured motorist protection for their passengers. This omission in the Safety Responsibility Act may simply reflect a legislative

oversight; however, the statute as written is the statute we must construe. If the current law does not accurately reflect the intent of its makers, changes such as those supported by appellant should be addressed to the legislature.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.