Mrs. Herman **FOSTER** and John **Ewing,** natural parents of Jeffrey Adrian Ewing, aka Jeffrey Ewing Foster, deceased, a minor, and David Mac Kelly, Plaintiffs and Respondents,

v.

**SALT LAKE COUNTY,** a body corporate and politic of the State of Utah, Defendant and Appellant.

No. 19051.

Supreme Court of Utah.

Dec. 10, 1985.

Ted L. Cannon, Ralph D. Crockett, Salt Lake City, for defendant and appellant.

Carman E. Kipp, Stephen F. Hutchinson, Salt Lake City, for plaintiffs and respondents.

HOWE, Justice:

Defendant, Salt Lake County, appeals from a judgment for $15,000 rendered against it as self-insurer of its motor ve-hicles. The trial court also ordered the County to pay the costs of defense incurred by the driver of the vehicle who was operating it with the permission of the County. The plaintiffs cross-appeal contending that the court erred in limiting the County's liability to $15,000.

This case was previously before us in *Foster v. Salt Lake County*, Utah, 632 P.2d 810 (1981) (*Foster I*). The reader is referred to that opinion for a detailed statement of facts. Briefly summarized, on January 26, 1978, while under the influence of alcohol and while driving a vehicle issued to him by the County, David Mac Kelly struck and killed a pedestrian, sixteen-year-old Jeffrey Adrian Ewing. Kelly was a deputy county sheriff. The deceased's natural parents, Mrs. Herman Foster and John Ewing, brought a wrongful death action against, *inter alia*, Kelly and his employer Salt Lake County. Kelly tendered his defense to the County but the County refused to defend him and, in fact, the county attorney successfully prosecuted him for automobile homicide.

On December 12, 1978, Kelly entered into a stipulation with Foster and Ewing that he would not contest his liability at a non-jury trial; that he would assign to Foster and Ewing all rights that he might have against the County; and that Foster and Ewing would not execute against Kelly's assets on any judgment obtained against him, except to the extent of his rights against the County or any insurance company affording liability coverage to him. The County was neither a party to the stipulation nor made aware of it.

Pursuant to another stipulation of all the parties, dated January 4, 1979, the County and all other defendants except Kelly were dismissed without prejudice. Although trial was originally scheduled for January 29, 1979, Foster and Ewing secured a special trial setting for the next day, January 5, 1979. The County was not informed of the advanced trial date and claims that, as a precaution against possible liability, it had planned to have an attorney present at the trial to insure that Kelly put on a good

faith defense. The trial court was apprised of the December 12, 1978 stipulation and the trial proceeded. A judgment for $150,000 plus court costs of $538.35 was awarded against Kelly.

On January 30, 1979, Foster, Ewing, and Kelly joined as plaintiffs to bring the instant action against the County, seeking judgment declaring that the County was Kelly's liability insurer and thereby legally obligated to pay the judgment. On motion for summary judgment, the trial court held that under the County's self-insurance program, the County was required to provide liability coverage for the County-owned vehicle; that Kelly, as a permissive user of the vehicle, was insured by the County; that the County improperly refused to undertake Kelly's defense; and that the County was indebted to plaintiffs for $150,000 and to Kelly for his costs of defense. In essence, the court treated the County's self-insurance as a *policy of insurance* without any limitations on coverage and imposed upon the County the same duties that commercial insurance carriers owe to their insureds.

On appeal from that decision, we reversed and remanded because on the "record it [could not] be held as a matter of law that permissive use of a County vehicle by Kelly [was] a sufficient basis for holding the County liable as an insurer." *Foster I*, 632 P.2d at 814. We specifically noted that the "scope of the self-insurance, including the terms and limits of liability, simply was not addressed by the trial court." *Id.* at 815. Because the case was before us on appeal from a grant of summary judgment, we also raised a multitude of factual issues that we thought pertinent to a resolution of the case.

On remand, the trial court held that the County, as a self-insurer, was obligated to pay $15,000 of the judgment in accordance with the Motor Vehicle Safety Responsibility Act, U.C.A., 1953, §§ 41–12–1 to –41, and to afford Kelly the "usual related coverage and benefits customary in the insurance industry." The court held that the "usual related coverage and benefits" in-

cluded paying Kelly's costs of defense, court costs, and interest on the entire judgment of $150,000 from its date of entry until the County paid its $15,000. Additionally, the court found that the December 12, 1978 stipulation between Kelly as defendant and Foster and Ewing as plaintiffs "did not constitute collusion justifying relief of Salt Lake County from liability."

■ The County now again appeals contending that as a self-insurer its obligation to Foster and Ewing is limited to payment of no-fault benefits provided by the Utah Automobile No-Fault Insurance Act, U.C.A., 1953, § 31–41–1, *et seq.* This contention necessitates our analysis of the duties imposed by our statutes on self-insurers. Section 31–41–4 provides in part:

31–41–4 (1) Every resident owner of a motor vehicle shall maintain the security provided for in section 31–41–5 in effect continuously throughout the registration period of the motor vehicle.

. . . .

(3) The State of Utah and all of its political subdivisions and their respective departments, institutions, or agencies shall maintain in effect continuously in respect to their motor vehicles the security provided for in section 31–41–5.

Section 31–41–5 which is referred to in the foregoing subsections provides in part:

31–41–5 (1) The security required by this act shall be provided in one of the following methods:

(a) Security by insurance may be provided with respect to each motor vehicle by an insurance policy that qualifies under chapter 12 of Title 41 (the Safety Responsibility Act), except as modified to provide the benefits and exemptions provided for in this act, and has been approved by the department; or

(b) Security may be provided with respect to any motor vehicle by any other method approved by the department as affording *security equivalent to that offered by a policy of insurance* provided such security is continuously maintained throughout the motor vehicle's registration period. The person providing this

type of security shall have all of the obligations and rights of an insurer under this act.

(Emphasis added.)

Thus whether an owner provides security by an insurance policy as allowed by section 31–41–5(1)(a) or by any other approved method as allowed by section 31–41–5(1)(b), the insurance policy or its equivalent must qualify under chapter 12 of title 41 of our Code which is the Safety Responsibility Act. On July 1, 1977, Salt Lake County became an approved self-insurer and discontinued its prior practice of carrying insurance written by commercial insurance companies.

Turning now to chapter 12 of title 41 (Safety Responsibility Act), we note that section 41–12–21, mandates certain requirements of every owner's policy of liability insurance. That section provides in part:

> (b) Such owner's policy of liability insurance:
>
> (1) ...
>
> (2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, in the amount specified in section 41–12–1(k) of this act.

At the time of the accident in this case, section 41–12–1(k) fixed the minimum limits at $15,000 for bodily injury to or for the death of one person in any one accident.

It is therefore our conclusion that self-insurers in "affording security equivalent to that offered by a policy of insurance" that qualifies under "Chapter 12 of Title 41 (The Safety Responsibility Act)" were liable, at the time of the accident here, for up to $15,000 for damages inflicted by a permissive user of a vehicle. The County does not question that Kelly was a permissive user having been furnished a county-owned vehicle for use on a twenty-four-hour-a-day, seven-day-a-week basis. Since no determination has ever been made that Kelly was driving the vehicle at the time of the accident in the performance of any of his duties as a deputy sheriff and no judgment has been obtained against Salt Lake County under the principal of *respondeat superior*, the County has no legal liability for Kelly's negligence beyond its statutorily imposed duties as a self-insurer. This is a complete answer to the plaintiff's cross-appeal that the County is liable for the full $150,000 judgment taken against Kelly. It also answers why the provisions of the Utah Governmental Immunity Act, U.C.A., 1953, 63–30–1, *et seq.* and of chapter 48, title 63 (repealed 1983) are not applicable to this case since those provisions deal with claims against public employees arising out of their negligent acts and omissions in the course of employment.

The County next contends that no part of the judgment obtained by Foster and Ewing against Kelly can be enforced against it because the judgment was obtained through collusion. A party must establish collusion by clear and convincing evidence. *See Utah State Department of Social Services v. Pierren*, Utah, 290 Or. 161, 619 P.2d 1280 (1980). The trial court in the wrongful death action against Kelly was fully informed of the stipulation between the parties and subsequently two other district court judges independently found no collusion. Significantly, the trial court in this declaratory action took evidence on the County's claims of collusion and found "[t]hat the agreement of Foster and Ewing not to execute upon the personal assets of Kelly did not constitute collusion justifying relief of Salt Lake County from liability." Kelly effectively tendered his defense to the County but was refused assistance. He faced a wrongful death lawsuit with uncertain insurance coverage. Plaintiffs Foster and Ewing were willing to risk what they might have been able to recover from Kelly and to navigate uncharted waters to attempt to establish the

County's liability for damages. Had the County desired to protect itself against liability it could have taken an active role in Kelly's defense just as do commercial insurers, or to avoid possible ethical conflicts it could have obtained independent counsel for him.

The agreement of Foster and Ewing not to execute upon the personal assets of Kelly has not prejudiced the County in any way since the County as a self-insurer was statutorily liable for the $15,000. The agreement not to execute on Kelly's assets neither adds nor detracts from that liability. Neither was there any prejudice to the County because of the assignment by Kelly of his alleged rights of indemnification against the County. Again, the County as a self-insurer is statutorily liable to Foster and Ewing as injured members of the public and not because of any assignment by Kelly.

Based on its holding that a self-insurer must "furnish the usual related coverage and benefits customary in the insurance industry," the trial court ordered the County to pay Kelly's attorney fees and costs together with interest on the entire $150,000 judgment, plus court costs, until it paid its $15,000 portion. Nothing in the pertinent statutes analyzed above indicates that the legislature intended to make a self-insurer a quasi-insurance carrier and require it "to furnish the usual related coverage and benefits customary in the insurance industry" for permissive users of insured vehicles. Nothing in the statutes requires a self-insurer to defend permissive users against their negligent acts if the self-insurer elects not to do so. The statutes' purpose is to require automobile owners to provide security *to the public* for injuries arising out of the use of their vehicles. "Security equivalent to that offered by a policy of insurance" (section 31–41–5(1)(b)) does not engraft onto the statute those benefits which plaintiffs characterize as the "standard" insurance policy provisions. A commercial insurance carrier's liability to pay interest and costs on judgments which exceed the policy limit is controlled by its contract of insurance with its insured. *See generally* Annot., 76 A.L. R.2d 983 (1961). Unlike a commercial carrier, the County has made no contract of insurance with its insured employees and has not contracted to pay any amount over the statutory minimum security limits. As we stated in *American States Insurance Co. v. Utah Transit Authority*, Utah, 699 P.2d 1210 (1985), "[a] certificate of self-insurance is not really insurance or a policy of insurance; it is simply an assurance that judgments will be paid." *Id.* at 1212. (Citing *Guercio v. Hertz Corp.*, 40 N.Y.2d 680, 389 N.Y.Supp.2d 568, 358 N.E.2d 261 (1976)). In short, a self-insurer's duties toward the permissive users of its motor vehicles are controlled by statute and no statutory provision requires a self-insurer to pay the costs of defense for such users. Therefore, the lower court erred in ordering the County to pay anything above its $15,000 limit plus interest thereon and costs of this action.

The judgment below is affirmed in part and reversed in part, and the case is remanded to the trial court to amend the conclusions of law and judgment in accordance with this opinion. No costs on appeal awarded.

HALL, C.J., STEWART and ZIMMERMAN, JJ., and RONALD O. HYDE, District Judge, concur.

DURHAM, Justice, having disqualified herself, does not participate herein.

HYDE, District Judge, sat.