*1025 Justice DURHAM,
dissenting:
4[ 34 I disagree with the majority's conclusion that it is "impossible" to follow both the doctrine of equitable adoption and Utah's version of the Uniform Probate Code (Probate Code or Code). See supra ¶ 16.
135 State courts and state legislatures function in dialogue with one another and serve as checks on one another's power-alternately reinforcing, calling into question, and even reversing the other's law-making activities. In the words of one commentator, we live in a "world where common and statutory law are woven together in a complex fabric." David L. Shapiro, Continuity and Change in Statutory Interpretation, 67 N.Y.U. L. Rev. 921, 937 (1992). When courts fill interstices in statutory law in a manner the legislature disapproves of, the legislature can amend the statute to direct a different outcome in future cases. Similarly, the legislature can overrule or preempt common law doctrines by statute. See, eg., Bishop v. GenTec Inc., 2002 UT 36, ¶ 12, 48 P.3d 218 (holding that the Liability Reform Act preempted in part the common law doctrine of respondeat superior). Although courts cannot overrule statutory law on the basis of policy, they are responsible for determining the constitutionality of challenged statutes. See, e.g., Gallivan v. Walker, 2002 UT 89, ¶¶ 64, 83, 54 P.3d 1069 (holding that the multi-county signature requirement for initiatives violated the uniform operation of laws clause and the federal equal protection clause). Additionally, courts can call the attention of the legislature to statutes in need of clarification or modernization. See, eg., McArthur v. State Farm Mut. Auto. Ins. Co., 2012 UT 22, ¶¶ 40-47, 274 P.3d 981 (Durham, J., concurring) (urging the legislature to revisit the uninsured motorist statute).[1]
1 36 Given the dynamic nature of the state law-making process, we assume, absent a contrary indication, that the legislature intends its statutes to work in tandem with our case law, and we reconcile the common law with statutory law whenever possible. See Olseth v. Larson, 2007 UT 29, ¶ 39, 158 P.3d 532 ("We presume the Legislature is aware of our case law. ..."); see also Bishop, 2002 UT 36, ¶ 10, 48 P.3d 218 ("[The common law must necessarily give way" to statutory law only when the two are "in conflict" or when the legislature intended to preempt the common law.). Conflict preemption occurs only "where it is impossible ... to comply with both [the common law] and [statutory] requirements, or where [the common law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the legislature]." Navajo Nation v. State (In re Adoption of A.B.), 2010 UT 55, ¶ 33, 245 P.3d 711 (first alteration in original) (internal quotation marks omitted).
37 When the legislature enacted the Probate Code thirty-eight years ago, 1975 Utah Laws 579-715, it included the following seetion, which has not been amended: "Unless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions," Utax Cop® § 75-1-108. The legislature instructed the judiciary not to infer preemption just because the legislature had spoken on a subject. Rather, courts are to find preemption only where the Probate Code directly "displace[s]" a common law doctrine. At the time the Code was enacted with this presumption against preemption, equitable adoption had been the law in Utah for fifteen years. In re Williams' Estates, 10 Utah 2d 83, 348 P.2d 683 (1960). Yet nothing in the original Probate Code or its subsequent amendments either addresses or con-fliects with equitable adoption.
I. THE PROBATE CODF'S DEFINITIONS OF "CHILD" AND "PARENT" DO NOT UNDERMINE THE DOCTRINE OF EQUITABLE ADOPTION
1 38 The majority seems to recognize that equitable adoption was valid as a common law doctrine before the Code was enacted. See supra ¶¶ 17, 24. In the majority's view, equitable adoption and the previous probate code could coexist because the previous probate code did not define the terms "child" or *1026 "parent." [2] The majority holds that the Uniform Probate Code's definitions of "child" and "parent," quoted above in paragraph 19, are preemptive. See supra ¶¶ 19-21.
T39 Contrary to the majority's view, these definitions are not preemptive because the doctrine of equitable adoption is not premised on our ability to judicially define the statutory term "child" or "parent." The version of the probate code in effect when Williams' Estates was decided provided for intestate succession by a decedent's "child" or "issue." Utax CopE § 74-4-5(1)-(2) (1958). We did not reach our holding in Williams' Estates by judicially defining these statutory terms, as the majority suggests. See supra ¶ 20. Instead, we exercised our equitable power to hold that, even though the claimant was not a "child" or "issue" under the statute, justice required awarding her the same inheritance she would have received if she had been adopted. See In re Williams' Estates, 10 Utah 2d 83, 348 P.2d 683, 684 (1960). Nothing in the Uniform Probate Code definitions changes our ability to do that.[3] Equitable adoption has always operated in parallel with the probate code, providing a non-statutory, equitable right to inherit as if the claimant were the child of the decedent. See id.
{40 The majority further holds that equitable adoption conflicts with the Probate Code because it leads to a different distribution of estate assets than the intestacy provisions would otherwise dictate. Supro T 21. But supplemental legal and equitable principles-explicitly invited by the legislature in Utah Code section 75-1-1038-almost always alter the outcomes of the cases to which they are applied. Otherwise, there would be no reason to apply them. Courts in Utah and other states that have adopted the Uniform Probate Code have supplemented it in several outcome-determinative ways. See Berneau v. Martino, 2009 UT 87, ¶ 10, 223 P.3d 1128 (allowing the equitable discovery rule to toll the three-year statute of limitations required in the Probate Code); Morgan v. Zions First Nat'l Bank (In re Estate of Pepper), 711 P.2d 261, 263 (Utah 1985) (holding that final closing orders in a probate proceeding can be vacated through a rule 60(b) motion, despite the fact that section 75-3-1001 of the probate code "discharges a personal representative from further claim or demand after a final closing order has been entered"); In re Estate of Butler, 444 So.2d 477, 479 (Fla.Dist.Ct.App.1984) (estopping the first wife of decedent from asserting her inheritance rights as against the decedent's second wife); In re Estate of Peter C., 488 A2d 468, 470 (Me.1985) (holding that the common law rule that a guardian is in a fiduciary relationship to his ward was not abrogated by the adoption of the Uniform Probate Code even though the code does not shoulder guardians with fiduciary responsibilities); In re Estate of Foster, 102 N.M. 707, 699 P.2d 638, 645 (N.M.Ct.App.1985) (applying the equitable rule "authoriz[ing] an award of attorney fees for services rendered which confer a benefit upon the estate"); In re Estate of O'Keefe, 583 N.W.2d 138, 140 (S.D.1998) (holding that the cireuit court had the equitable authority to partially disqualify a beneficiary from inheriting from an estate because of his fraudulent acts); see also In re Estate of Wagley, 760 P.2d 316, 319-20 (Utah 1988) (holding that a claim of quantum meruit was appropriate in a probate case because under section 103, "principles of law and equity supplement the provisions of the [Utah Uniform Probate Code] unless displaced by particular provisions of the Code").
{41 More specifically, several states that have enacted the Uniform Probate Code recognize equitable adoption. See, eg., Calista Corp. v. Mann, 564 P.2d 53, 61 & n.18 (Alaska 1977) (holding that Alaska's version of *1027 Utah Code section 75-1-108 permitted the court to recognize equitable adoption); In re Estate of Jenkins, 904 P.2d 1316, 1320 (Colo.1995) (en banc) (acknowledging that the state recognizes equitable adoption); Jolley v. Seamco Labs, Inc., 828 So.2d 1050, 1051 (Fla.Dist.Ct.App.2002) (same); Johnson v. Johnson, 617 N.W.2d 97, 101 (N.D.2000) (same). I am aware of no case in which a litigant has argued or a court has held that equitable adoption is incompatible with the Uniform Probate Code.
142 Because the doctrine of equitable inheritance has never relied on the absence of a definition of "child" or "parent" in the probate code, and because equitable principles are almost always outecome-determina-tive where applied, I would hold that the Uniform Probate Code's definitions of "child" and "parent" do not conflict with the doctrine of equitable adoption.
II. THE PROBATE CODES RULE THAT ADOPTED CHILDREN CANNOT INHERIT FROM THEIR BIOLOGICAL PARENTS IS IRRELEVANT TO THE DOCTRINE OF EQUITABLE ADOPTION
143 The majority also finds preemption based on the Probate Code's rule that "for purposes of intestate succession [aln adopted individual is the child of the adopting parent ... and not of the natural parents." Utah Cope § 75-2-114(1)-(2); see supra ¶¶ 22-27. The majority correctly states that claimants who inherit under the doctrine of equitable adoption could also inherit from their biological parents because "the doctrine of equitable adoption ... is purely beneficial to the child and in no way alters the legal relationship between the claimant and the decedent or between the claimant and the biological parents." Supra ¶ 22; see Tracy Bateman Farrell, Annotation, Modern Status of Law as to Equitable Adoption or Adoption by Estoppel, 122 A.L.R.5th 205, § 2[a] (2004). I agree with this assessment. But the necessary implication of the "purely beneficial" nature of equitable adoption is that Utah Code section 75-2-114(2) is irrelevant to our preemption inquiry. In a case of equitable adoption, there is no "adopted person" and no "adopting parent."
144 The majority seems to have derived its own version of a fairness principle from this Code section that would prevent individuals from inheriting both from their biological parents and from other adults who perform parental duties. However, the intestacy statutes allow individuals to inherit from a wide range of relatives. The Probate Code does not contain a one-person-one-inheritance rule. Section 75-2-114 simply clarifies the effect of a statutory adoption-which has no relation to the inaptly named doctrine of equitable adoption [4]-on intestate succession.
III. THE STATED OBJECTIVES OF THE PROBATE CODE ARE NOT IN CONFLICT WITH THE DOCTRINE OF EQUITABLE ADOPTION
1 45 I disagree with the majority's emphat-ie conclusion that equitable adoption frustrates the following "underlying purposes and policies" of the Probate Code:
(a) To simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors, and incapacitated persons;
(b) To discover and make effective the intent of a decedent in distribution of his property;
(e) To promote a speedy and efficient system for administering the estate of the decedent and making distribution to his successors; ...
(e) To make uniform the law among the various jurisdictions.
Utah Cope § 75-1-102(2).
1 46 The majority's strongest point is that eduitable inheritance adds uncertainty to the determination of an intestate decedent's *1028 heirs, in frustration of objective (a). A claim of equitable adoption does indeed require a court to consider evidence for and against the claim. But any of the legal and equitable principles with which the legislature has invited courts to supplement the Probate Code could be viewed as adding "uncertainty, complexity, and inefficiency." See supra ¶ 29. The legislature evidently is willing to tolerate a degree of complication in furtherance of a just and eqiritable outcome.[5]
47 The remaining objectives could be furthered or hindered by equitable adoption, depending on the cireumstances of individual cases. As to objective (b), the majority notes that the "presumptive preference" of a decedent who dies intestate is for assets to be distributed according to the Probate Code. Supra ¶ 31. However, a decedent could also rely on the common law doctrine of equitable adoption found in Williams' Estates, which has been binding law in Utah for over fifty years. Furthermore, in a case like the present one, a decedent would likely have preferred to leave his estate to an individual whom the decedent raised as his own child rather than to distant relatives with whom he might not have had any personal relationship.
T48 As to objective (c), equitable adoption will likely prolong many but not all estate proceedings in which it is claimed. In this case, if the viability of the doctrine had not been challenged, it may have been speedier and more efficient to award the entire estate to Mr. Nakai than to trace the decedent's bloodlines to distant relatives, painstakingly calculate each relative's share, and distribute the estate (including personal and real property) among nineteen individuals.
149 Regarding objective (e), the goal of uniformity would be furthered slightly more by retaining the doctrine of equitable adoption than by overruling it. Approximately half of the states recognize equitable adoption, but of the state courts to have directly considered the doctrine, significantly more than half have adopted it. See Tracy Bate-man Farrell, Annotation, Modern Status of Law as to Equitable Adoption or Adoption by Estoppel, 122 A.L.R.5th 205 (2004). This trend suggests that equitable adoption will continue to grow in acceptance.
1 50 Equitable adoption does not categorically frustrate the purposes of the Probate Code. Neither these stated objectives nor the other Code provisions analyzed above provide a basis for overruling the doctrine. Because no "particular provisions" of the Probate Code have "displaced" equitable adoption, see Urax Cope § 75-1-103, I would allow the doctrine to continue to coexist with statutory law, as it has done for over fifty years. Given the majority's foreclosure of this outcome, however, I would encourage the legislature to consider the policy arguments in favor of its specific inclusion in the Code.

. Evidentiary and procedural rule-making is another arena where the courts and the legislature interact, with the supreme court having primary authority and the legislature the power to amend rules. See Utah Const. art. VIII, § 4.

. The majority refers to the previous version of the probate code as an "open-ended system." Supra 1 17. This characterization is surely exaggerated. The probate code in effect when Williams' Estates was decided addressed intestate succession in as much detail as the Code provisions quoted in paragraph 18. Compare Utah Code § 75-2-103 (2013) with Cope § 74-4-5 (1953).

. Even if equitable adoption were a judicial method of interpreting the statutory term "child," it would be difficult to find preemptive intent in the Code's exclusion of foster children and grandchildren because Williams' Estates did not involve these categories of individuals.

. The presence of the word "adoption" in the phrase "equitable adoption" falsely suggests a relationship between this doctrine and statutory adoption. I prefer the term "equitable inheritance" because it is more descriptive of the specific relief that ought to be available to claimants in limited circumstances and does not suggest itself as a basis for other rights and duties associated with adoption.

. As a side note, I do not share the majority's general skepticism of state common-law development. See supra ¶¶ 30-31. Incremental change through resolution of the questions posed by individual cases is the sine gua non of the common law. See Judith S. Kaye, State Courts at the Dawn of a New Century, 70 N.Y.U. L. Rev. 1, 5 (1995).