484 P.2d 1180

The WESTERN CASUALTY AND SURE-TY COMPANY, Plaintiff and Respondent,

v.

TRANSAMERICA INSURANCE COMPANY et al., Defendants and Appellant.

No. 12265.

Supreme Court of Utah.

May 10, 1971.

John L. Chidester, Heber City, for appellant.

Glenn C. Hanni, of Strong & Hanni, Salt Lake City, for Western Casualty & Surety Co.

Raymond M. Berry, Allan L. Larson, Worsley, Snow & Christensen, Salt Lake City, for Transamerica Insurance Co.

ELLETT, Justice.

This appeal involves the interpretation of the omnibus clause of two separate insurance policies. The trial court granted a summary judgment holding that neither policy afforded any coverage to Dan Allison or to the estate of his deceased minor son Rick, who at the time of his death was sixteen years of age.

There is no dispute as to the facts of the case, and summary judgment would be proper if as a matter of law either party was entitled to a judgment.

The father, hereinafter called Dan, had a son-in-law, James. Dan and James decided to attend a livestock show, which required them to travel to another city and to be away from home overnight. It was necessary to take the automobile owned by

Dan and used by Rick in going to and from his work. In order to afford transportation for Rick, it was decided to let him use a jeep belonging to James but with the specific direction from the owner that the jeep was to be used only in going to and coming from work and that he was not to be running around in it. That night Rick violated the conditions regarding the jeep by going to a dance, taking his girl friend home, and finally about midnight going twenty or more miles from his home with two of his friends to assist two other boys start their automobile which had run out of gasoline. While siphoning gas from the jeep to the stalled car, the boys were run into by another motorist, resulting in fatalities. An action was commenced against Dan and the estate of Rick. Dan had made himself liable for Rick's negligence by signing Rick's application for a driver's license.

Western Casualty and Surety Company wrote a policy for Dan containing the following language:

V. Use of Other Automobiles: If the named insured is an individual or individual and spouse and if during the policy period such named insured or spouse owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B and division 1 of coverage C with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

(a) Except with respect to division 1 of coverage C, the unqualified word "insured" includes (1) such named insured and spouse, (2) any relative of such named insured or spouse * * * * * * * * * *

(d) This insuring agreement does not apply to any automobile: * * * * * *

(2) used without the express or implied permission of the owner.

Dan gave no instructions to Rick about the use of the jeep.

James was insured under a policy written by Transamerica Insurance Company containing the following provision:

Persons Insured: The following are insureds under Part 1:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * * *

If both policies afford coverage, then that written on the jeep would be primary, and that written on Dan's car would be secondary or excess. Western brought this suit to have determined which policy, if either, would afford coverage to Dan and the estate of Rick in the negligence action.

We are not here concerned with the question of whether or not Rick was negligent or responsible in any manner for the collision. We are only asked to determine which, if either, of the two insurance companies should undertake the defense of the matter.

Dan claims protection under the provisions of Section 41–12–21(b), U.C.A.1953 (Replacement Volume 5A), reading:

(b) Such owner's policy of liability insurance:

\* \* \* \* \* \*

(2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied *permission of such named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle \* \* \* [Emphasis added.]

Since Dan gave no instructions at all and knew Rick was to use the jeep, he contends that Rick was by Western's policy covered, since the use of the jeep was with the implied permission of the *named insured.*

■ We need not dwell on this provision of the statute, since it applies only to cases where one is compelled to secure a policy *after* an accident in order to be able to continue to drive his automobile. It pertains to policies secured under the Safety Responsibility Act and has no application to policies written before any accident occurs. Utah Farm Bureau Ins. Co. v. Chugg, 6 Utah 2d 399, 315 P.2d 277 (1957). The policies involved herein were written prior to accident and are to be interpreted the same as any other contract. In the Chugg case, supra, this court said at page 402 of the Utah Reports, 315 P.2d at page 279:

It being conceded that the policy was not issued because Chugg had been required by the Commission to furnish proof of financial responsibility in conformance with the Act, it follows that the provisions of the Act do not apply to it. Unless Chugg had been within the purview of the Act when the policy was issued, its provisions, unless illegal, are subject to the same construction as any other contract, in accordance with the expressed intent of the parties. \* \* \*

There is a split in the authorities as to the meaning to be given to the words "ex-

press or implied permission of the owner" as used in the omnibus provision of the insurance policies. One group holds that any deviation by the permittee from the contemplated use of the vehicle will defeat the coverage. A second group holds that once permission is given to use the vehicle, coverage will extend to all uses whether in contemplation of the owner or not. The third group holds that a slight deviation from the contemplated use will not violate the omnibus provisions of coverage. See the annotation in 5 A.L.R.2d beginning with Section 10, page 622.

The cases cited under the second group mentioned above, that is, in jurisdictions which liberally construe the term *permission* to include all uses once the permittee is given the general control of the car, seem to be cases in which the permittee was given the general control of the car and the limitations, if any, were by general rules, or where no express limitations were placed upon the permittee. Examples are cases where employees are given an automobile with directions to use it in connection with the employer's business or where general rules of the company prescribe the use to which the car will be put.

Cases dealing with situations where the permittee violates express orders regarding the time, place, or manner of driving can be found under Section 20 of the annotation in 5 A.L.R.2d beginning at page 651.

The case of Caldwell v. Standard Acc. Ins. Co., 98 F.2d 364 (6 Cir. 1938), is squarely in point with the instant matter. There the owner of the car gave her minor son permission to take her car and go to a picture show in Dalton, where they lived. She specifically told him to return as soon as the show was over. Instead of returning, he and his friend started to go to Resaca, where a dance was being held. On the way he was involved in a collision, and in that case the question of coverage under the omnibus clause of the owner's policy of insurance was involved. The court held that there was no coverage and in doing so said:

If the evidence had presented a conflict as to permission, a nice question would have arisen, for under this record undoubtedly W. R. Evans, Jr., had practically the exclusive use of the car, with his mother's consent. It does not appear that his mother drove at all. He drove the car in her business and used it constantly for his own school transportation and his personal pleasure. However, as to this particular transaction, the evidence is uncontroverted that permission to go to Resaca was not given, and in fact there was a positive prohibition against taking the car from Dalton. Both the son and the mother testified that Evans was given the car to go to the picture show, and was told to return immediately after the show. In addition,

Mrs. Evans told her son "not to go anywhere else."

\*   \*   \*   \*   \*   \*

\* \* \* There is an even stronger reason, however, for holding that the policy does not cover the accident. The particular use was not only not specifically permitted; it had actually been forbidden. We have been cited to no decision which holds that under an omnibus clause such as here involved a specific prohibition as to manner of use is outweighed by a general permission so that coverage is extended actually against the orders of the named assured. In fact the authority is contra. [Citations omitted.]

Since the use made of the car was prohibited, it was not used with the permission of the named assured, and the company is not liable under the policy.

There is only one case cited in the annotation, supra, allowing coverage where the permittee violated specific restrictions made upon him regarding the time, place, or manner of driving, to wit, United States Fidelity & G. Co. v. De Cuers, D.C., 33 F. Supp. 710, and that case is criticized by the editor of the annotation as follows:

In one isolated case an opposite result was reached and the use of the car by the employee was held to be with the permission of the employer despite the fact that the employee violated an express instruction of his employer not to use the automobile for his own purposes. Although in this case the car was in the independent control of the employee this fact would not seem to justify the result reached by the court, even in a jurisdiction following the liberal deviation doctrine. \* \* \*

It is a lower court ruling and has little to recommend it as authority for the holding announced.

In the instant case Rick was specifically instructed not to use the jeep except in going to and coming from work; and when he returned from work, he had no further permission to use the jeep. No implied permission of the owner can be found permitting the use to which the jeep was being put at the time of the collision.

█ As to the policy covering Dan Allison, it does not require that the driving be within the scope of the permission granted to Rick. It only requires that it be with the permission of the *owner*. In view of the overwhelming weight of authority to the effect that one is not driving with the permission of the owner when he drives contrary to the owner's express instruction, we hold that the policy with Western Casualty and Surety Company does not afford any coverage to either Dan or the estate of Rick.

The policy covering the jeep excludes coverage when the driving is not with the

permission of the owner, and in addition thereto it excludes coverage unless the driving is within the scope of the permission granted. That provision in the policy makes a stronger case for noncoverage by Transamerica Insurance Company than does the policy of Western Casualty and Surety Company.

The judgment of the lower court is affirmed. No costs are awarded.

CALLISTER, C. J, and TUCKETT, HENRIOD and CROCKETT, JJ., concur.