**ALLSTATE INSURANCE COMPANY, a corporation, Plaintiff and Respondent,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY et al., Defendants and Appellants.**

No. 16306.

Supreme Court of Utah.

Oct. 16, 1980.

7. U.C.A., 1953, 27–12–89.

J. Anthony Eyre of Kipp & Christian, Thomas Duffin, Salt Lake City, for Brookfield.

L. E. Midgley, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Allstate Insurance Company initiated a declaratory action to determine the validity of a named driver exclusionary endorsement to an automobile liability insurance policy, issued by United States Fidelity and Guaranty Company to Brookfield Products, Inc. The district court found the exclusion void, and granted Allstate Insurance Company's motion for summary judgment. On appeal, United States Fidelity and Guaranty Company challenges this order, and the district court's dismissal of their motion for summary judgment. We affirm the lower court's ruling as limited by the holding in this opinion. All statutory references are to Utah Code Annotated, 1953, as amended.

On March 14, 1977, United States Fidelity and Guaranty Company, hereinafter USF&G, issued to Brookfield Products, Inc., hereinafter Brookfield, an automobile liability insurance policy for the period of March 14, 1977, to March 14, 1978. When initially issued, the policy contained no restrictions to the omnibus coverage found in the original contract documents.

However, upon issuing the policy USF&G requested a list of potential drivers of

Brookfield vehicles. After investigating the named individuals, USF&G informed Brookfield they would no longer insure Brookfield vehicles driven by Jerry Pulliam, hereinafter Pulliam.[1]

Thereafter, USF&G drafted a named driver exclusion which was signed by Dale Hanks, manager of Brookfield Products, Inc., and endorsed as part of the liability policy in May, 1977. Following the addition of the exclusionary endorsement to the insurance policy, Brookfield personnel informed Pulliam he was no longer covered by insurance, and was not to drive Brookfield vehicles. Pulliam was then assigned to warehouse duties where he eventually assumed a position as warehouse supervisor.

On January 5, 1978, because there were no other employees available, Pulliam was allowed to drive a Brookfield truck to Heber City to make a delivery for the company.[2] While enroute, the vehicle developed a mechanical problem which caused Pulliam to veer onto the opposite side of the road and into the on–coming traffic. The ensuing collision resulted in the death of Ora Parcell.

On the day of the accident, Allstate Insurance Co., hereinafter Allstate, had in effect an automobile liability policy in favor of the deceased, which included both "No–Fault" or "Personal Injury Protection" and "Uninsured Motorist" coverage. Because of the named–driver exclusionary endorsement, USF&G refused to extend liability coverage to Pulliam, thereby rendering him an "uninsured motorist." Allstate, therefore, compensated the estate of Ora Parcell under the "uninsured motorist" provisions of his liability policy.[3]

Allstate initiated a declaratory action in the district court to determine the validity of the "named driver" exclusion and the financial responsibility of USF&G under the Brookfield policy.[4] Allstate joined as defendants' Brookfield Products, Inc., Jerry Pulliam and Vee L. Parcell, personal representative of the estate of Ora Parcell, in the lower court proceedings. Brookfield and Pulliam entered a cross–complaint against USF&G requesting the insurance policy issued by USF&G be declared in full force and effect and the exclusion void.

Following the presentation of evidence and arguments by the various parties the district court held the restrictive endorsement to be of no force or effect. The court granted Allstate's motion for summary judgment, and decreed USF&G liable under the policy in question.

USF&G appeals from this order and the district court's dismissal of its motion for summary judgment.

This appeal presents to this Court a question of first impression concerning the validity of an exclusionary endorsement, to an automobile liability policy, which is presented as security under the provisions of the Utah No–Fault Insurance Act.

■ Although we cannot accept the contention of Allstate, viz., the enactment of the Utah No–Fault Act establishes a "constructive compulsory liability insurance requirement,"[5] we believe the language of

---

1. The policy had been in effect for approximately two months before Brookfield was informed of the limitation on its coverage.

2. The evidence presented at trial indicates that on at least two prior occasions Pulliam drove company vehicles with the express permission of Brookfield personnel. On each occasion Pulliam was reminded of the exclusion and warned to be "extra careful" because of the absence of insurance coverage.

3. Allstate tendered payment of the maximum personal injury payments to the estate of Ora Parcell. The subrogation of USF&G for these payments is not before the Court in the present appeal. See generally *Allstate Insurance Company v. Ivie*, Utah, 606 P.2d 1197 (1980).

4. Also, the estate of Ora Parcell has commenced an action against Brookfield Products, Inc., arising out of the said accident.

5. The respondents, Allstate, Brookfield and Pulliam, contend the relationship between the Utah Safety Responsibility Act, 41–12–1, et seq., and the Utah No–Fault Insurance Act, joined by the strong public policy evidenced by the enactment of these two statutes, renders all exclusionary endorsements in automobile liability insurance policies unenforceable. They rely heavily on California and Arizona cases which

31–41–5 evidences a legislative intent to mandate liability coverage in all insurance policies presented as security under Section 31–41–4.

Specifically, 31–41–4 requires:

"(1) every resident owner of a motor vehicle shall maintain the security provided for in Section 31–41–5 in effect continuously throughout the registration period of the motor vehicle." [6]

The requirement of security prior to registration of a motor vehicle in this state is clarified by 31–41–5, which states:

"(1) The security required by this act shall be provided in one of the following methods:

(a) Security by insurance may be provided with respect to each motor vehicle by an insurance policy that qualifies under Chapter 12 of title 41 (the Safety Responsibility Act), except as modified to provide the benefits and exemptions provided for in this act, and has been approved by the department; or ..."

▬ Thus, the No–Fault Act, while ostensibly distinct from the Safety Responsibility Act, expressly incorporates provisions of the latter act, (those setting out the "qualifications" of an insurance policy under that act) into its security requirements. We interpret this as evidence of the intent of the legislature, to require the minimum coverages outlined in the Safety Responsibility Act in all insurance policies used as security for the registration and subsequent operation of motor vehicles in Utah.

The qualifying language of the Safety Responsibility Act is found primarily in 41–12–21.[7] That section provides among other qualifications, the owner's or operator's policy of liability insurance shall be issued, except as otherwise provided in Sections 41–12–20,[8] by an insurance carrier duly authorized to transact business in the State. The provision goes on to explain:

"(b) Such owner's policy of liability insurance:

"(1) shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

"(2) shall insure the persons named therein and *any other person*, as insured, *using any such motor vehicle or motor vehicles with the express or implied permission of such named insured*, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interests and costs, with respect to each such motor vehicle, in the amount specified in Section 41–12–1(k) of this act." [9] [Emphasis added.]

---

hold exclusionary clauses void as contrary to the public policy evidenced by those states' Financial Responsibility Laws. See *Wildman v. Government Employees' Insurance Company*, 48 Cal.2d 31, 307 P.2d 359 (1957); *Jenkins v. Mayflower Insurance Co.*, 93 Ariz. 287, 380 P.2d 145 (1963); *Bohrn v. State Farm Mutual Automobile Insurance Co.*, 226 Cal.App.2d 497, 38 Cal.Rptr. 77 (1964). But see *Metz v. Universal Underwriters Ins. Co.*, 10 Cal.3d 45, 109 Cal.Rptr. 698, 513 P.2d 922 (1973). However, Utah and the majority of jurisdictions have interpreted the provisions of the Safety Responsibility Act as applicable only to policies required to be "certified" and have not incorporated the omnibus requirements found in the statute to all automobile liability insurance policies. See *Western Casualty and Surety Co. v. Transamerica Insurance Co.*, 26 Utah 2d 50, 484 P.2d 1180 (1971); *Utah Farm Bureau Insurance Co. v. Chugg*, 6 Utah 2d 399, 315 P.2d 277 (1957); see also 8 A.L.R.3d 388; 12 Couch on Insurance 2d, Sec. 45: 739, p. 650. We have not retreated from that position by our holding in the present case.

6. 31–41–13 presents the penalties for failure to comply with the security requirements of the Act.

7. 41–12–5 also contains some language qualifying policies under this Act. However, the qualifications under that section are subsumed within the provisions of 41–12–21.

8. 41–12–20 pertains to nonresident owners and is inapplicable in the present situation.

9. 41–12–21 lists several other requirements which the minimum liability coverage must incorporate, and which are not material in the present controversy.

Further reference to 41–12–1(k) sets the minimum liability limits necessary to qualify under the Safety Responsibility Act and by incorporation, the No–Fault Insurance Act. That section requires minimum liability coverage for damages arising out of the ownership, maintenance or use of a motor vehicle to be:

" ... the amount of $15,000 because of bodily injury to or death of one person, in any one accident, and, subject to said limit for one person, in the amount of $30,000 because of bodily injury to or death of two or more persons in any one accident, and in the amount of $5,000 because of injury to or destruction of property of others in any one accident, or in lieu of the foregoing limits, a single limit of not less than $25,000.[10]

■ The incorporation of the qualifying provisions of Chapter 12 of Title 41 requires: a) minimum omnibus coverage including persons operating the vehicle with the express or implied permission of the owner–insurer, and b) the minimum liability limits detailed in 41–12–1(k). Thus, by reference to the Safety Responsibility Act the legislature has established a mandatory minimum liability coverage requirement for insurance policies presented as security under 31–41–5.

■ In the present situation, because Pulliam was driving with the express permission of Brookfield, the named driver exclusion is void in relation to the minimum level of liability coverage mandated by 41–12–1(k).

■ Our decision does not, however, read the named driver exclusionary endorsement out of the contract entirely. Rather, contracting parties are free to limit coverage in excess of the minimum required limits,[11] and the exclusion found in the contract is valid in relation to any coverage exceeding the minimum amounts.[12] Thus, a balance is struck between the necessity of securing minimum automobile liability coverage and the availability of lower premiums because of the exclusion of high insurance risks. This effectuates the express twofold purpose of the Utah No–Fault Insurance Act which is to require the payment of certain prescribed benefits in respect to motor vehicle accidents while stabilizing the rising costs of automobile accident insurance.[13]

Therefore, we affirm the lower court's decision that the named driver exclusionary endorsement is void, but only in relation to the mandatory minimum liability coverage. The exclusion is enforceable as to any insurance coverage provided to Brookfield above those minimum limits.[14]

After a thorough consideration of the other issues presented on appeal we conclude they are not meritorious.

WILKINS and STEWART, JJ., concur.

HALL, Justice (dissenting):

I am of the opinion that this case should be reversed both on procedural grounds as well as on the merits.

Allstate lacks standing to bring this lawsuit in its present form. Its complaint seeks the interpretation of an insurance contract between Brookfield Products and USF&G, specifically, the validity of an exclusion clause. Allstate is neither a party to the contract nor an assignee. An injured

---

10. 41–12–1.

11. See 41–12–21(g). This section states: "Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this act...."; see also 31–41–5(2).

12. See *Estate of Neal v. Farmers Ins. Exchange*, 93 Nev. 348, 566 P.2d 81 (1977); *State Farm Mutual Automobile Ins. Co. v. Hinkel*, 87 Nev. 478, 488 P.2d 1151 (1971); Cf. *Unigard Security Insurance Co. v. Schaefer*, Tex., 572 S.W.2d 303 (1978).

13. See 31–41–2.

14. We also acknowledge the "clean hands" position of USF&G in this particular situation and the inequity of releasing Brookfield (who with full knowledge of the exclusionary endorsement allowed Pulliam to drive a company vehicle) from its contractual bargain.

party is a stranger to the tortfeasor's insurance contract and hence, has no legal interest in the enforcement of that contract nor a right to sue thereon.[1] Since Parcell (the injured party) is a stranger to the Brookfield–USF&G contract, then, *a fortiori,* Allstate is also a stranger to the contract inasmuch as its rights are derivative in nature.[2]

As to Brookfield's cross–complaint against USF&G, I deem it injudicious for the Court to invalidate the exclusion–a provision of the insurance contract entered into by the parties at arm's length. Having agreed to the exclusion, Brookfield should be barred from challenging its validity. At the very least, equitable estoppel should apply. In *Migliaccio v. Davis,*[3] this Court ruled as follows:

> * * * Equitable estoppel or estoppel in pais is the principal [sic] by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying or asserting the contrary of, any material fact, which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words and conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.[4]

In the instant case, it is undisputed that USF&G had the absolute right to cancel the insurance policy upon proper notice at any time, for any reason. On Brookfield's affirmative representation that Pulliam had been transferred to the warehouse and would not thereafter drive the insured vehicles, USF&G continued to provide liability coverage. Notwithstanding Brookfield's representations, Pulliam was permitted to continue driving company vehicles. Because of the misrepresentation or concealment of the fact that Pulliam was still driving, Brookfield and Pulliam should be estopped from asserting that the exclusionary endorsement is invalid, void or unenforceable.

In light of the foregoing, I believe that the summary judgment should be reversed without ever reaching the merits of the decision. Nevertheless, my analysis of the case on its merits also dictates reversal.

The majority opinion improperly interferes with the constitutional freedom of contract, traditionally treated as being both a liberty and a property right[5] protected by due process.[6] The United States Supreme Court has stated that the freedom to contract is the essence of freedom from undue restraint on the right to contract.[7] It is an inherent and inalienable right,[8] which is guaranteed to every citizen.[9] Every man has the right freely to deal, or refuse to deal, with his fellow man,[10] and this Court should refrain from upsetting that right in the instant case.

The contract entered into explicitly excluded coverage for vehicles driven by Pul-

1. *Utah Farm Bureau Insurance Company v. Chugg,* 6 Utah 2d 399, 315 P.2d 277 (1957); see also, *Ammerman v. Farmers Insurance Exchange,* 19 Utah 2d 261, 430 P.2d 576 (1967).

2. See generally 44 Am.Jur.2d, Insurance, § 1820.

3. 120 Utah 1, 232 P.2d 195 (1951).

4. Quoting 19 Am.Jur., Estoppel, § 34.

5. *Sol Block & Griff v. Schwartz,* 27 Utah 387, 76 P. 22 (1904); see generally 16A Am.Jur.2d, Constitutional Law, § 592.

6. Constitution of the United States, Fifth and Fourteenth Amendments and Constitution of Utah, Article I, § 7.

7. *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); see also, constitutional provisions against impairment of contracts, Constitution of the United States, Article I, § 10, and Constitution of Utah, Article I, § 18.

8. *Frisbie v. United States,* 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657 (1895).

9. *Bayside Fish Flour Co. v. Gentry,* 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772 (1936).

10. *Federal Trade Comm. v. Raymond Bros.-Clark Co.,* 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448 (1924).

liam. Apparently, the exclusion of coverage for poor risk drivers is a common practice in the industry. In its answers to interrogatories, Allstate admitted the following:

> ... under certain circumstances of a bad loss history or routine driver's license check showing that there is an adverse driving record on a driver, which renders the risk undesirable, the company gives the named insured notice that he has an option to renew the policy, excluding the driver, or to secure other insurance.

Brookfield voluntarily entered into the exclusion agreement. It knew that if Pulliam drove Brookfield vehicles, insurance coverage was excluded.[11] Nevertheless, it proceeded to allow Pulliam to drive, thereby exposing itself to liability. To hold USF&G responsible for Pulliam's accident is, in my estimation, grossly unfair and without support in the law.

It is not important to recognize that what is involved here are not "no-fault" benefits,[12] but, rather, uninsured motorist provisions of a liability policy, which is governed generally by the Safety Responsibility Act.[13] As acknowledged by the majority, the omnibus requirements found in the Act apply only to policies required to be "certified."[14] This principle has been adopted by a vast majority of jurisdictions and has been explained as follows:

> The rationale of these cases is that the safety responsibility laws do not provide for compulsory motor vehicle liability insurance; that they are prospective in intendment, operate in futuro and are based upon the philosophy that every dog is allowed by the law one free bite; that such laws apply only to a second accident and not to a first accident; that there is no requirement that the owner or operator of a motor vehicle carry a policy of liability insurance or that it contain any particular provisions unless and until the safety responsibility law has been invoked by the occurrence of some event resulting in the order of a state official that security be deposited or that proof of financial responsibility be made; that the policy must be a "required" policy before the provisions of the safety responsibility law are to be incorporated therein.[15]

The security provisions contained in Utah's No-Fault Act relating to liability appear to be consistent with similar provisions contained in Utah's Safety Responsibility Act[16] which has previously been interpreted by this Court.

I would reverse.

CROCKETT, C. J., concurs in the dissenting opinion of HALL, J.

---

11. Brookfield told Pulliam of the exclusion and, on each occasion that he drive company vehicles, warned him to be "extra careful" because he was not covered by insurance.

12. Although not at issue here, USF&G concedes that had Pulliam been injured as a result of the automobile accident, he would have been entitled to the no-fault benefits under the policy.

13. U.C.A., 1953, 41-12-21.1.

14. *Western Casualty and Surety Co. v. Transamerica Insurance*, 26 Utah 2d 50, 484 P.2d 1180 (1971); *Utah Farm Bureau Insurance Co. v. Chugg*, supra, footnote 1.

15. *Miller v. State Farm Mutual Automobile Insurance Company*, 204 Kansas 694, 466 P.2d 336 (1970), quoting *Gabler v. Continental Casualty Company*, 295 S.W.2d 194 (Mo.App.1956).

16. Statutory provisions are to be construed as consistent whenever possible. See *Monson v. Hall*, Utah, 584 P.2d 833 (1978).