2004 UT 56

**Jimmy CALHOUN and John Calhoun, Plaintiffs and Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Progressive Insurance Company, Defendants and Appellees.**

No. 20020805.

Supreme Court of Utah.

July 9, 2004.

Daniel F. Bertch, Kevin R. Robson, Salt Lake City, for plaintiffs.

Lowell V. Smith, Albert W. Gray, Salt Lake City, for defendant State Farm Mutual Automobile Insurance Company.

Joseph J. Joyce, Kristin A. Van Orman, Salt Lake City, for defendant Progressive Insurance Company.

DURRANT, Justice:

¶ 1 In this appeal, we address the scope of automobile insurance coverage required by Utah's Financial Responsibility of Motor Vehicle Owners and Operators Act ("Financial Responsibility Act"). *See* Utah Code Ann. §§ 41–12a–101 to –806 (1998). Specifically, we address (1) whether an automobile insurance policy containing an "owned vehicle" exclusion complies with the owner's or operator's security requirement of Utah Code section 41–12a–301(2)(a), *see id.* § 41–12a–301(2)(a); and if so, (2) whether such a policy satisfies the financial responsibility requirements for an excluded "named driver" under Utah Code section 31A–22–303(7), *see id.* § 31A–22–303(7) (Supp.1998). Because both insurance policies at issue comply with the minimum statutory automobile insurance coverage requirements, we affirm.

## BACKGROUND

¶ 2 "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. We state the facts of this case accordingly." *In re Discipline of Sonnenreich,* 2004 UT 3, ¶ 3, 86 P.3d 712 (quotations omitted).

¶ 3 This case arises out of a 1998 automobile accident in which plaintiff John Calhoun lost control of his father's Jeep Comanche pickup truck and collided with two vehicles parked on the side of the road. At all relevant times, John resided with his parents, Jimmy and Rosalie Calhoun. John's parents insured the Jeep with an automobile liability insurance policy purchased from State Farm Mutual Automobile Insurance Company ("State Farm").

¶ 4 As a member of the Calhoun household, John was insured under the State Farm policy up through November 1996. However, because of John's poor driving record, State Farm informed the Calhouns in November 1996 that it would not renew the policy issued on the Jeep unless John was excluded from coverage pursuant to Utah Code section 31A–22–303(7). *See* Utah Code Ann. § 31A–22–303(7) (Supp.1998). Consequently, Jimmy and Rosalie executed a "named driver" exclusion agreement that read, in pertinent part, as follows:

## REQUEST FOR TOTAL DRIVER EXCLUSION ENDORSEMENT

I agree to amendment of the policy or policies listed above by addition of the following endorsement:

IN CONSIDERATION OF THE PREMI-UM CHARGED FOR YOUR POLICY IT IS AGREED WE SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO U.S. FOR BODILY INJURY, LOSS OR DAMAGE UNDER ANY OF THE COVERAGES OF THE POLICY WHILE ANY MOTOR VEHICLE IS OPERATED BY John C. Calhoun.

As the named insured, I understand and certify that the named person excluded from coverage, has in fact, satisfied the owner's or operator's security requirement of Section 41–12a–301, independently of the named insured's proof of owner's or operator's security.

As a result of the State Farm exclusion, John purchased, through the Curry Insurance Agency, an insurance policy from another unidentified insurance company for his own vehicle, a Mercury Topaz.

¶ 5 In May 1997, approximately six months after Jimmy and Rosalie signed the State Farm "named driver" exclusion, John was involved in an automobile accident while driving his Mercury Topaz. Consequently, John replaced the Topaz with a Suzuki Samurai. Shortly thereafter, he also replaced the unidentified automobile insurance on his Suzuki with a policy purchased from Progressive Insurance Company ("Progressive"). As with his previous insurance policy, John obtained the Progressive policy through the Curry Insurance Agency. At the time of purchase, Jason Curry, the agent from whom John purchased the Progressive policy, purportedly represented that the policy would provide full coverage for all vehicles that John drove, including his father's Jeep.

¶ 6 Contrary to the alleged representations of the agent, however, the Progressive policy did not provide insurance coverage for the Jeep. Under its general statement of coverage, the Progressive policy provided insurance coverage for any accident arising out of any person's use of the Suzuki with the express or implied permission of either John or a household relative. It also provided coverage to John and his household relatives for any accident arising out of the ownership, maintenance, or use of any other vehicle with the express or implied permission of the vehicle's owner. In the exclusion portion of the policy, however, an "owned vehicle" exclusion expressly limited the policy's general grant of coverage by excluding insurance coverage for accidents involving the use of vehicles not listed on the policy that were owned by either John or any of his household relatives. The exclusion read, in pertinent part, as follows:

***EXCLUSIONS*—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

. . .

12. **bodily injury** or **property damage** resulting from the operation or use of a vehicle **owned** by **you** or a **relative**, other than a **covered vehicle.**

Because John's Suzuki was the only vehicle named in the Progressive policy, the policy did not provide coverage for John's use of his father's Jeep.

¶ 7 On December 19, 1998, Jimmy gave permission to John to drive the Jeep. While driving the Jeep, John lost control and struck two vehicles parked on the side of the road.

¶ 8 Following the accident, John sought to recover damages under his own Progressive policy. Alternatively, he also sought compensation under his parents' insurance policy with State Farm. Both Progressive and State Farm refused to provide liability coverage for the accident.

¶ 9 As a result, John and Jimmy filed a complaint in district court against Progressive and State Farm, alleging breach of contract and breach of fiduciary duty. Both insurance companies moved for summary judgment based on the exclusions in each company's respective policy, which the district court granted.

¶ 10 John and Jimmy appeal the district court's grant of summary judgment. They argue that (1) John's Progressive policy, or alternatively, (2) the Calhouns' State Farm policy should provide coverage for the 1998

accident. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## STANDARD OF REVIEW

¶ 11 Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). We review the district court's order granting summary judgment for correctness and accord no deference to the district court's legal conclusions. *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 14, 56 P.3d 524.

## ANALYSIS

### I. THE PROGRESSIVE POLICY

¶ 12 The Calhouns assert that the Progressive policy should provide coverage for the 1998 accident for two reasons. First, they argue that the Progressive policy's "owned vehicle" exclusion does not provide the minimum statutory automobile insurance coverage mandated by Utah law, *see* Utah Code Ann. § 41–12a–301(2)(a) (1998), and therefore contend that the policy should cover John's use of his father's Jeep. Additionally, the Calhouns argue that Progressive should be estopped from denying coverage based on the representations made to John by the Curry Insurance Agency that the Progressive policy would provide him with "full coverage" on any vehicle he drove, including his father's Jeep. We address each argument in turn.

#### A. *Minimum Statutory Automobile Insurance Requirements*

¶ 13 The Calhouns first challenge the validity of John's Progressive policy. Essentially, they argue that, with the "owned vehicle" exclusion, the Progressive policy "falls short" of the minimum statutory automobile insurance requirements. Therefore, the Calhouns

argue that we should construe the Progressive policy to provide coverage in this case.

¶ 14 Section 41–12a–301 of Utah's Financial Responsibility Act [1] mandates, in relevant part, that "every resident owner of a motor vehicle shall maintain owner's or operator's security in effect at any time that the motor vehicle is operated on a highway within the state." Utah Code Ann. § 41–12a–301(2)(a). The terms "owner's security," "operator's security," or "owner's or operator's security" are defined as "an insurance policy or combination of policies conforming to Section 31A–22–302." *Id.* § 41–12a–103(9)(a).[2] Section 31A–22–302 provides that "[e]very policy of insurance or combination of policies purchased to satisfy the owner's or operator's security requirement of Section 41–12a–301 shall include ... motor vehicle liability coverage under Section[ ] 31A–22–303." *Id.* § 31A–22–302(1)(a) (1994). And section 31A–22–303 states that a policy shall

(i) name the motor vehicle owner or operator in whose name the policy was purchased, state that named insured's address, the coverage afforded, the premium charged, the policy period, and the limits of liability;

(ii) (A) *if it is an owner's policy,* designate by appropriate reference all the motor vehicles on which coverage is granted, insure the person named in the policy, insure any other person using any named motor vehicle with the express or implied permission of the named insured, and, except as provided in Subsection (7), insure any person included in Subsection (1)(a)(iii) against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles[;] ... or

(B) *if it is an operator's policy,* insure the person named as insured against loss from the liability imposed upon him by law for damages arising out of the

---

1. *See* Utah Code Ann. §§ 41–12a–101 to –806 (1998). This Act replaced the former Utah Safety Responsibility Act, Utah Code Ann. §§ 41–12–1 to –41 (repealed effective July 1, 1986).

2. An insurance policy is only one method of complying with section 41–12a–301(2)(a)'s own-

er's or operator's security requirements. *See* Utah Code Ann. § 41–12a–103(9)(a)–(e) (listing other methods by which an owner may comply with section 41–12a–301(2)(a)'s financial responsibility requirements).

insured's use of any motor vehicle not owned by him ... with the same limits of liability as in an owner's policy under Subsection (1)(ii)(A);

(iii) except as provided in Subsection (7), insure persons related to the named insured by blood, marriage, adoption, or guardianship who are residents of the named insured's household, including those who usually make their home in the same household but temporarily live elsewhere, to the same extent as the named insured....

*Id.* § 31A–22–303(1)(a)(i)–(iii) (Supp.1998) (emphasis added). As long as the liability coverage provided in any automobile insurance policy satisfies, in addition to all other applicable statutes, either the requirements of an owner's policy under subsection (A), *or* an operator's policy under subsection (B), the insurance policy complies with the minimum insurance requirements mandated by section 31A–22–303, and thus satisfies the financial responsibility requirements of section 41–12a–301(2)(a).

¶ 15 Because the Progressive policy in this case states simply that it is a "Utah Motor Vehicle Policy," there is some dispute as to the exact nature of the coverage provided by the policy. Although the Calhouns and Progressive agree that the policy is, at minimum, an owner's policy, the parties disagree as to whether subsection (A) requires an owner's policy to insure the named insured's permissive use of any household member's vehicle in addition to the insured's use of the vehicle named in the policy. Moreover, the parties also disagree as to whether the Progressive policy is an operator's policy, and whether it provides, or should be construed to provide, operator's coverage that would insure John's accident here.

¶ 16 Because all parties agree that the Progressive policy is an owner's policy, we will first examine whether the owner's policy portion of subsection (A) requires the policy to provide coverage for John's use of his father's Jeep. If we determine that the policy need not provide such coverage, we will then address whether the policy is also an operator's policy, and whether the policy either provides, or should be construed to provide, the type of operator's coverage that would insure John in this case.

1. Owner's Coverage

¶ 17 As an owner's policy, the Calhouns argue that the Progressive policy must cover John's permissive use of any household member's vehicle. They base this assertion on the language in subsection (A) of section 31A–22–303(1)(a)(ii), which states that an owner's policy must "insure the person named in the policy." *Id.* § 31A–22–303(1)(a)(ii)(A). According to the Calhouns, this language requires an owner's policy to insure the named insured not just as to liability incurred from driving the motor vehicle named in the policy, but also as to liability incurred from driving all other vehicles with either the express or implied permission of the owner. Under this interpretation, the Calhouns argue that the Progressive policy must provide insurance coverage for John's use of his father's Jeep.

¶ 18 If we were to interpret the phrase "insure the person named in the policy" in isolation, we would no doubt be more inclined to agree with the Calhouns' position. However, when deciding questions of statutory interpretation we do not look to language in isolation. Rather, we look first to the statute's plain language, in relation to the statute as a whole, to determine its meaning. *Bd. of Educ. v. Sandy City Corp.*, 2004 UT 37, ¶ 9, 94 P.3d 234. When viewed in light of the language and structure of section 31A–22–303, we conclude that subsection (A)'s mandate that an owner's policy "insure the person named in the policy" requires only that a policy provide insurance for the person named in the policy with respect to damages arising out of the insured's use of the motor vehicle named in the policy.

¶ 19 Section 31A–22–303(1)(a)(i) begins with the requirement that all automobile insurance policies include certain basic coverage information, including the name of the automobile owner or operator in whose name the policy is purchased, the named insured's address, the coverage afforded by the policy, the premium charged for the coverage, the period for which the policy will provide cov-

erage, and the policy's limits of liability. Utah Code Ann. § 31A–22–303(1)(a)(i). The statute goes on to include additional policy coverage requirements, depending on whether the policy is an owner's policy or an operator's policy:

> (ii) (A) *if it is an owner's policy,* designate by appropriate reference all the motor vehicles on which coverage is granted, insure the person named in the policy, insure any other person using any named motor vehicle with the express or implied permission of the named insured, and, except as provided in Subsection (7), insure any person included in Subsection (1)(a)(iii) against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles[;] . . . *or*
>
> (B) *if it is an operator's policy,* insure the person named as insured against loss from the liability imposed upon him by law for damages arising out of the insured's use of any motor vehicle not owned by him . . . with the same limits of liability as in an owner's policy under Subsection (1)(ii)(A);

*Id.* § 31A–22–303(1)(a)(ii)(A)–(B) (emphasis added).

¶ 20 The legislature's separation of these two sections by the disjunctive "or," as opposed to the conjunctive "and," clearly mandates that a policy need only provide owner's coverage or operator's coverage—not both.[3] *See* Utah Code Ann. § 41–12a–301(2)(a) (requiring vehicle owners to "maintain owner's *or* operator's security" (emphasis added)). Given the clear division between an owner's policy as described in subsection (A), and an operator's policy in subsection (B), a plain reading of this statute suggests that the legislature intended for an owner's policy to provide coverage with respect to a particular vehicle, and for an operator's policy to provide coverage for a particular individual.

¶ 21 Our interpretation is guided by the fact that, in distinguishing between these two policy types, the legislature chose the terms "owner" and "operator." By definition, the term "owner" is closely associated with a specific *vehicle, see id.* §§ 31A–22–301(6), 41–12a–103(8)(a) (defining "owner" as "a person who holds legal title to a motor vehicle"), while the term "operator" is more closely associated with the specific *individual, see id.* §§ 31A–22–301(5), 41–12a–103(7) (defining "operator" as "every person who is in actual physical control of a motor vehicle").

¶ 22 Our interpretation is further supported by the fact that the phrase "insure the person named in the policy" is preceded by the requirement that the policy "designate by appropriate reference *all the motor vehicles on which coverage is granted,*" and followed immediately by the requirement that the policy "insure any other person using any *named motor vehicle* with the express or implied permission of the named insured." *Id.* § 31A–22–303(1)(a)(ii)(A) (emphasis added). Subsection (A)'s requirement that an owner's policy insure the vehicle *named* in the policy, as opposed to subsection (B)'s requirement that an operator's policy insure the insured's use of *any* vehicle, supports our conclusion that, unlike an operator's policy, an owner's policy only mandates insurance coverage of the insured's use of the vehicle (or vehicles) named in the policy.

¶ 23 Finally, interpreting the phrase "insure the person named in the policy" in subsection (A) as pertaining only to the insured's use of the named vehicle is also favorable from a public policy perspective. Section 31A–22–303(1)(a)(iii) requires insurance policies to insure all household members not specifically excluded under subsection (7) to the same extent as the named insured. *Id.* § 31A–22–303(1)(a)(iii). If we were to follow the Calhouns' proposed interpretation and require an owner's policy to provide the type of operator's coverage contemplated by subsection (B), owners of multiple vehicles could purchase an owner's policy for one vehicle and, absent a "named driver" exclusion for each member in the insured's house-

---

**3.** An owner is certainly not precluded, however, from obtaining both owner's and operator's coverage. *See* Utah Code Ann. § 31A–1–103(2) (1994) ("What this title [31A] does not prohibit is permitted unless contrary to other provisions of Utah law.").

hold,[4] obligate insurance companies to provide coverage for all other uninsured vehicles and for all other household members. This would, as Progressive notes, undoubtedly result in markedly higher insurance premiums and could seriously impact the ability of automobile owners to obtain affordable automobile insurance.

¶ 24 Therefore, we hold that the phrase "insure the person named in the policy" in section 31A–22–303(1)(a)(ii)(A) requires that an owner's policy insure the named insured with respect to the vehicle named in the policy—not that an owner's policy must insure the named insured with respect to any vehicle he or she drives. Because the Progressive policy does so in this case, it complies with the minimum insurance requirements of an owner's policy under subsection (A). Accordingly, as an owner's policy, the Progressive policy is only required to provide insurance coverage to John for accidents arising out of the use of his Suzuki, not his father's Jeep.

2. Operator's Coverage

¶ 25 The Calhouns argue that even if the Progressive policy does not cover John's use of his father's Jeep as an owner's policy, the Progressive policy provides, or should be construed to provide, coverage for John's accident as an operator's policy. The Calhouns assert that this result is warranted because either the policy is an operator's policy according to its plain language, or alternatively, the policy language is ambiguous, and should be construed against Progressive and in favor of coverage. We address each argument in turn.

a. *The Progressive Policy Permissibly Excludes John's Use of the Jeep.*

■ ¶ 26 In support of their assertion that Progressive is required to insure John's accident, the Calhouns argue that, by its own terms, the Progressive policy is an operator's policy. The language in the policy to which the Calhouns refer stems from Progressive's promise to pay damages for bodily injury and property damage "for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of a vehicle." (Emphasis omitted.) The policy defines "insured person" to include, in relevant part, "you [the named insured] or a relative with respect to an accident arising out of the ownership, maintenance, or use of *any* vehicle with the express or implied permission of the owner of the vehicle." (Original emphasis omitted and emphasis added.) The Calhouns argue that because this language "tracks the language of the . . . 'operator's policy' portion of [section 31A–22–303(1)(a)(ii)(B) ]," the Progressive policy is an operator's policy that must cover John's use of his father's Jeep.

¶ 27 We agree with the Calhouns that this initial provision appears to provide the type of operator's insurance coverage contemplated by an operator's policy in subsection (B). However, this statement of coverage must be read in light of the policy's explicit limitations of coverage, which include, in pertinent part, the following:

***EXCLUSIONS*—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

. . .

12. **bodily injury** or **property damage** resulting from the operation or use of a vehicle **owned** by **you** [the named insured] or a **relative,** other than a **covered vehicle.**

When the Progressive policy is read in conjunction with this unequivocal exclusion, it is clear that although the policy may provide additional operator's coverage, it is not an "operator's policy" within the meaning of section 31A–22–303(1)(a)(ii)(B).

■ ¶ 28 Moreover, contrary to the Calhouns' assertions, exclusionary endorsements such as the "owned vehicle" exception at issue are not necessarily invalid. "Rather, contracting parties are free to limit coverage

---

4. If an insurance policy excluded all other drivers under the "named driver" exception, each excluded driver would be obligated to independently satisfy section 41–12a–301(2)(a)'s owner's or operator's security requirements. *See* Utah Code Ann. § 31A–22–303(7) (Supp.1998).

in excess of the minimum required limits, and [an] exclusion found in [a] contract [is] valid in relation to any coverage exceeding minimum amounts." *Allstate Ins. Co. v. United States Fid. & Guar. Co.*, 619 P.2d 329, 333 (Utah 1980) (footnote omitted); *see also* Utah Code Ann. § 31A–1–103(2) (1994) ("This title [31A] restricts otherwise legitimate business activity. What this title does not prohibit is permitted unless contrary to other provisions of Utah law."). As long as any exclusions are phrased in "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided," exclusions in insurance policies beyond the minimum coverage limits are allowed. *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1275 (Utah 1993) (quotations omitted).

¶ 29 The court of appeals correctly recognized that such exceptions are permissible when it upheld a similar "owned vehicle" exclusion in *Hill v. Farmers Insurance Exchange*, 888 P.2d 138 (Utah Ct.App.1994). In that case, the defendants had insured three vehicles under separate automobile insurance policies. *Id.* at 139. Each policy excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle other than [the] insured car [named in the policy], which [was] owned by or furnished or available for regular use by [the named insured] or a family member." *Id.* (emphasis and footnote omitted). Following an automobile accident in which the defendants' sixteen-year-old daughter injured the plaintiffs, the plaintiffs sought to recover under each of the three separate insurance policies. *Id.* at 139–40. The court of appeals rejected the plaintiffs' attempts to obtain multiple recoveries. *Id.* at 140–41. Because the policies unambiguously excluded coverage for the use of other household vehicles not named under each policy, the court held that the plaintiffs were not entitled to recover under the defendants' remaining two insurance policies. *Id.* at 141.

▮ ¶ 30 A similar result is warranted in this case. First, the Progressive policy provides the minimum "owner's policy" insurance coverage required by law. *See supra*

Part I.A.1. Therefore, any additional coverage provided may be limited as long as the language is clear and unmistakable—which is the case here. The Progressive policy's statement that it will not afford coverage for "bodily injury or property damage resulting from the operation or use of a vehicle owned by you [the named insured] or a relative, other than the covered vehicle" clearly and unmistakably communicates to the insured that, notwithstanding the policy's general grant of operator's coverage, the policy will not extend coverage to the insured's use of any household relative's vehicle not named in the Progressive policy. Given this unequivocal limitation, the policy's "owned vehicle" exclusion permissibly limits the additional operator coverage it provides in its policy to exclude liability for John's use of his father's Jeep.

b. *The Progressive Policy's "Owned Vehicle" Exclusion Is Not Ambiguous*

¶ 31 The Calhouns argue that even if the Progressive policy does not explicitly provide operator coverage in this case, the policy is ambiguous, and should therefore be construed to provide the type of operator's liability insurance that would cover John's accident. They reason that because the Progressive policy only states that it is a "Utah Motor Vehicle Policy," and fails to specify whether it is an owner's or operator's policy, "[t]he insured, upon reading the policy, would have no way of knowing that Progressive intended to only provide the statutorily required coverage of [section] 31A–22–303(1)(a)(ii)(A) but not the statutory coverage in [section] 31A–22–303(1)(a)(ii)(B)." Because Progressive created the alleged ambiguity, the Calhouns contend that we should resolve the issue in favor of coverage and construe the Progressive policy to extend insurance coverage to John's use of his father's Jeep.

▮ ¶ 32 Although the Calhouns correctly note that we resolve ambiguities in insurance policies in favor of coverage, *Nielsen v. O'Reilly*, 848 P.2d 664, 665–66 (Utah 1992); *see also Pollard v. Truck Ins. Exch.*, 2001 UT App 120, ¶ 7, 26 P.3d 868; *Hill*, 888 P.2d at 138, policy language is ambiguous only

when it is not "plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of words, and in the light of existing circumstances, including the purpose of the policy." *Nielsen*, 848 P.2d at 666 (quotations omitted). As indicated above, the "owned vehicle" exclusion language in this case is not ambiguous. The exclusion clearly states that Progressive will not defend John for "bodily injury or property damage resulting from the operation or use of a vehicle owned by ... a [household] relative, other than the covered vehicle." (Emphasis omitted.) Although John may have believed he was obtaining full coverage for his vehicle, the policy makes clear that coverage will not extend to John's use of his father's Jeep. Accordingly, we decline to construe the Progressive policy to extend coverage to John in this case.

### B. *The Calhouns' Estoppel Argument*

¶ 33 The Calhouns further argue that even if the Progressive policy satisfies Utah's minimum statutory automobile insurance requirements and properly excludes coverage for John's use of his father's Jeep, Progressive should be estopped from denying liability coverage based on the purported representations of Jason Curry, the insurance agent who procured the Progressive policy, that the policy would cover all vehicles that John drove, including the Jeep. The Calhouns base their estoppel argument on the contention that Mr. Curry was an agent for Progressive. However, the only argument the Calhouns provide in support of their agency claim is the bald assertion that Progressive does not dispute that Mr. Curry was its agent, an assertion that was clearly disputed by Progressive before the district court as well as on appeal.

■ ¶ 34 Generally, the issue of whether an individual is an agent is a question of fact. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 314 (Utah 1998). However, where there are no disputed issues of fact, we determine whether an individual is an agent as a matter of law. *Larsen v. Christensen*, 21 Utah 2d 219, 220–21, 443 P.2d 402, 403 (1968); *see also Mecham v. Consol. Oil &*

*Transp., Inc.*, 2002 UT App 251, ¶ 8, 53 P.3d 479. Because the Calhouns have failed to adequately brief why the district court erred, as a matter of law, in determining that, based on the undisputed facts, Mr. Curry was not a Progressive agent, we decline to address the issue. *See Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 46, 70 P.3d 904.

¶ 35 In sum, we conclude that Progressive is under no obligation to insure John's accident involving his father's Jeep. By its terms, the Progressive policy is an owner's policy that provides additional operator's coverage. Because the policy complies with the minimum statutory requirements of an owner's policy and unmistakably limits the additional operator's coverage it provides, the district court correctly granted summary judgment in favor of Progressive on the basis that the Progressive policy's "owned vehicle" exclusion precluded it from liability for the accident in this case.

## II. STATE FARM'S POLICY

■ ¶ 36 Having determined that the exclusions in the Progressive policy are valid and that the Progressive policy does not extend insurance coverage for John's 1998 accident, we next address the Calhouns' alternative argument that State Farm did not satisfy the requirements of the "named driver" exclusion in Utah Code section 31A–22–303(7), *see* Utah Code Ann. § 31A–22–303(7) (Supp.1998), and that we should therefore construe the State Farm policy to fill the coverage "gap" created by the two policies.

¶ 37 Before addressing this argument, we first note that, contrary to State Farm's assertions, we did not explicitly reject an identical argument in *Dairyland Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 882 P.2d 1143 (Utah 1994). Although the facts in *Dairyland* were similar to those in the instant case, the issue there concerned whether an excluded household member under the "named driver" exclusion was covered by the policy as a "permissive user" pursuant to Utah Code section 31A–22–

303(1)(b)(i).[5] *Id.* at 1144. We specifically reserved the issue now raised before us; namely, "whether a policy such as [Progressive's] that fails to cover the primary insured when he or she is driving substitute vehicles from the same household constitutes independent insurance sufficient to satisfy the owner's and operator's security requirement under subsection (7)." *Id.* at 1144 n. 1.

¶ 38 The "named driver" exclusion on which the State Farm policy is based is set forth in Utah Code section 31A–22–303(7). *See* Utah Code Ann. § 31A–22–303(7) (Supp. 1998). That section provides as follows:

> A policy of motor vehicle liability coverage under Subsection 31A–22–302(1) may specifically exclude from coverage a person who is a resident of the named insured's household, including a person who usually makes his home in the same household but temporarily lives elsewhere, if each person excluded from coverage satisfies the owner's or operator's security requirement of Section 41–12a–301, independently of the named insured's proof of owner's or operator's security.

*Id.* To comply with this "named driver" exclusion, the Calhouns argue that the excluded driver's independent insurance policy must provide that driver with full coverage for "all permissive driving uses." They argue that because the Progressive policy did not do so with respect to John, the State Farm policy should be construed to cover John's accident in this case.

¶ 39 State Farm counters that the "named driver" exclusion provision in section 31A–22–303(7) does not require the named driver's insurance to cover *every* accident. Rather, it argues that, by its plain language, subsection (7) only requires excluded drivers to "satisf[y]" the owner's or operator's security requirement of Section 41–12a–301, inde-

pendently of the named insured's proof of owner's or operator's security." *Id.* Because both the unidentified insurance policy and the Progressive policy satisfied section 41–12a–301, State Farm contends that the "named driver" exclusion in its policy is valid and properly excludes coverage for John.[6] We agree with State Farm.

¶ 40 We acknowledge that, together, the Progressive and State Farm policies allow for a "gap" in insurance coverage with respect to John's use of other household relatives' vehicles not named in his Progressive policy. However, the plain language of Utah's relevant automobile insurance statutes allows for such a gap. Section 31A–22–303(7) does not require that, in order to properly exclude a named driver, the excluded driver must obtain insurance covering every permissive use of a vehicle. Rather, it provides that an insurer "may specifically exclude from coverage a person who is a resident of the named insured's household ... if each person excluded from coverage satisfies the owner's *or* operator's security requirement of Section 41–12a–301, independently of the named insured's proof of owner's or operator's security." *Id.* (emphasis added). Because there is no dispute that John's previous independent insurance policy satisfied the "owner's security" requirement of section 41–12a–301, and because we have determined that Progressive's subsequent policy also satisfies the "owner's security" requirement of section 41–12a–301, John had, in fact, satisfied section 41–12a–301 at all relevant times. Accordingly, there is no question that State Farm properly excluded John pursuant to a valid "named driver" exclusion. We therefore hold that the district court was correct in deciding that, under the "named driver" exclusion, State

---

**5.** That section was later renumbered and is currently section 31A–22–303(1)(a)(ii)(A).

**6.** In its brief, State Farm suggests that, to comply with the "named driver" exclusion of subsection (7), an insurance company need only rely on its insured's certification that, at the time the exclusion is executed, the excluded driver has satisfied the financial responsibility requirements of Utah Code section 41–12a–301. In other words, State Farm implies that it has no duty to independently

investigate whether the excluded named driver has, in fact, satisfied the financial responsibility requirements set forth in section 41–12a–301. Because the Calhouns do not dispute that the first unidentified insurance policy satisfied section 41–12a–301, and we have determined that the Progressive policy satisfies section 41–12a–301, we need not reach this issue and therefore decline to address it.

Farm is not liable for John's accident in this case.

## CONCLUSION

¶ 41 We conclude that neither Progressive nor State Farm is obligated to insure John's accident involving his father's Jeep.

¶ 42 As an owner's policy under Utah Code section 31A–22–303(1)(a)(ii)(A), the Progressive policy is only required to provide insurance on the Suzuki Samurai named in the policy—not to extend liability coverage to all other vehicles driven by John. Because the policy adequately insures John for damages incurred arising from the ownership, maintenance, or use of his Suzuki, it complies with the minimum financial responsibility requirements of section 41–12a–301. Moreover, the "owned vehicle" exclusion on the policy's additional operator coverage is a valid and unambiguous contractual limitation that properly excludes liability for John's use of his father's Jeep. Thus, Progressive is not liable for John's accident in this case.

¶ 43 Similarly, the State Farm policy properly excludes John pursuant to a valid "named driver" exclusion. Because the "named driver" exclusion in Utah Code section 31A–22–303(7) only requires that the excluded person satisfy the owner's or operator's security requirement of section 41–12a–301, which the unidentified insurance policy and the Progressive policy did, State Farm is not obligated to insure John for the damages incurred while driving his father's Jeep.

¶ 44 Accordingly, we affirm the district court's grant of summary judgment in favor of Progressive and State Farm.

¶ 45 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.